[Civ. No. 22586.   Second Dist., Div. One.   Feb. 5, 1958.]

CLARA HELLMAN HELLER et al., Respondents, v. CITY COUNCIL OF THE CITY OF SEAL BEACH et al., Appellants.

Robert Buck and Clarence Hengel for Appellants.

John G. Clock, Clock, Waestman & Clock, Lloyd W. Dinkelspiel and Heller, Ehrman, White & McAuliffe for Respondents.

Edmund G. Brown, Attorney General, and Eugene B. Jacobs, Deputy Attorney General, as Amici Curiae on behalf of Respondents.

FOURT, J.—This is an appeal from a judgment wherein a writ of mandate was issued against the appellants, commanding in effect that the proceedings of appellants having to do with annexation of petitioners' property to the city of Seal Beach be terminated.

On January 6, 1956, the city council of the city of Seal Beach, sometimes hereinafter referred to as "appellants," passed a resolution numbered 915 proposing the annexation, under the Annexation of Uninhabited Territory Act of 1939

(Gov. Code, §§ 35300-35326), to the city of Seal Beach, of certain property adjoining the then existing boundaries of the city. Property owned by the petitioners, hereinafter referred to as "respondents," and property owned by the United States of America, known as "United States Naval Ammunition and Net Depot," constituted the greater part of the property proposed to be annexed. There were, however, some smaller parcels owned by Hancock Oil Company, the Southern California Edison Company and Ernest A. Bryant and others described in the resolution above referred to. The latter two were nonprotesting owners.

On January 17, 1956, the city council adopted resolution numbered 915 which described by metes and bounds the property proposed to be annexed and set 7:30 o'clock p. m., February 29, 1956, as the deadline for the filing of protests against the proposed annexation, pursuant to section 35313, Government Code. The proceedings were designated as "The Hellman-Naval Depot Annexation" in the last mentioned resolution, and among other things, set forth that protests need only be in writing, stating the name of the owners and describing the property and the area involved in general terms.

Before February 29, 1956, respondents filed with the city council a written document wherein respondents stated that they protested the annexation. The various interests were designated, the property was generally designated, and some major parcels thereof were specifically described by metes and bounds.

On February 29, 1956, the city council met and reviewed certain documents which had been submitted (among them the protests of respondents), and determined that some of the documents did not constitute legal protests and that others did. It was found that a letter from the Assistant Secretary of the United States Navy was not a legal protest. The city council did find, however, that the document submitted by the respondents was a formal protest and ordered it filed as such. The city council also made findings as to the value, shown by the last equalized assessment roll, of the property belonging to the respondents. The assessment roll of 1955 showed, and the city council found, respondents' property to be valued at $160,560, and the value of the Hancock Oil Company property, which company had filed a protest, to be $37,390. Of respondents' property, $120,780 thereof consisted of property specifically described by metes and bounds, and the remaining $38,780 thereof was as to property not specifically described.

The value of the property as shown by the assessment roll of Southern California Edison Company was $3,500, and that of Ernest A. Bryant was $1,150, or a total of $4,650 valuation represented by nonprotesting private owners.

The value of all the property assessed on the 1955 equalized assessment roll (excluding the United States Naval Ammunition and Net Depot property which was exempt and therefore not valued) was $202,600.

At the same meeting, the city council assigned a value of $825,080 to the United States Naval Ammunition and Net Depot property, and then took the position that they were entitled to include the value of the government property, as so determined by them, in determining whether the owners of one-half in value of the property proposed to be annexed had protested. The inclusion of the United States Naval Ammunition and Net Depot property put the total value assigned to all of the property at $1,027,680, and the city council thereupon determined that the property valued at $197,950 was not enough to stop the annexation proceedings. The city council then adopted an ordinance numbered 488, approving the annexation of the property described in resolution numbered 915. Thereafter the city clerk followed the procedure outlined in the Government Code in such cases. Prior to the time a certified copy of the resolution was filed, an alternative writ of mandate was issued by the Superior Court in Los Angeles County. A hearing was had on May 23, 1956, and the court did, on June 12, 1956, order the issuance of a peremptory writ of mandate. Judgment was entered January 17, 1957. The appeal is from the judgment.

Appellants contend that "essentially the important point and only issue in this case is the construction and application of Sections 35312 and 35313 of the Government Code, as amended in 1955 . . . which sections form parts of the 'Annexation of Uninhabited Territory Act of 1939, Government Code Section 35300, *et seq.*' "

The sections in question read as follows:

"§ 35312. At any time before the hour set for hearing objections, any owner of property within the territory may file written protest against the annexation. The protest shall state the name of the owner of the property affected and the description and area of the property in general terms. As used in this article, 'owner' means the owner as shown on the last equalized assessment roll, or the person or persons entitled to be shown as owner on the last equalized assessment roll, or

where the property affected is subject to a recorded written agreement to buy, the purchaser under such agreement to buy shall be deemed the owner. Protests may be made on behalf of the owner by an agent.''

''§ 35313. At the time set for hearing protests, or to which the hearing may have been continued, the legislative body shall hear and pass upon all protests so made. If protest is made by the owners of one-half of the value of the territory as shown by the last equalized assessment roll, or if protest is made by public and private owners equal to one-half of the value of the territory proposed to be annexed, further proceedings shall not be taken. The value to be given publicly owned property for protest purposes shall be determined by the legislative body. As used in this article, 'value of the territory' means the value of the land and improvements thereon.''

In short the appellants contend that the court erred in refusing to take into consideration for protest purposes the value of a publicly owned property as determined by the city council, and in finding and concluding that the total value to be considered was only that of privately owned property in the amount of $202,600.

Recently, the attorney general had occasion to write an opinion with reference to the sections of the code in question in the present case (30 Ops.Cal.Atty.Gen., pp. 1-6). It was appropriately stated in that opinion, as follows:

''. . . The applicant and other private owners of real property located within the territory to be annexed (which property was shown on the last equalized assessment roll) filed within the proper time, and apparently in the proper manner, protests to the annexation. Some land and improvements owned by public agencies were located within the territory proposed to be annexed. Section 35302.5 of the Government Code provides: 'Real property belonging to a governmental agency may be annexed pursuant to this article.' (Added by Calif. Stats. 1955, ch. 883, § 2. See also, *Potter* v. *City Council*, 102 Cal.App.2d 141, 143, 145-146 [227 P.2d 25].) No public agency, (federal, state, or local) owning property within the territory filed a protest to the annexation. At the public hearing, the city council, (pursuant to Gov. Code §§ 35312-35313) in determining the sufficiency of the protests, computed the total value of the land and improvements in the territory by adding the value of the land and improvements as shown on the last equalized assessment roll to the value of publicly owned property as determined by the city

council. Thereafter at the same hearing, the city council made a finding that written protests were not made by the owner or owners of one-half of the value of the territory proposed to be annexed according to the last equalized assessment roll of the county, or by public or private owners equal to one-half of the value of the territory proposed to be annexed as determined by the city council.

"It appears that the written protests by persons shown on the last equalized assessment roll represented more than one-half of the value of the territory as shown by the last equalized assessment roll although the written protests were less than one-half of the combined value of public and private property located in the territory proposed to be annexed regardless of the method of valuation (assessment roll or market value) used.

"After the protest hearing, the city council enacted an ordinance allegedly annexing the territory to the City . . and . . . the ordinance was filed with the Secretary of State. . . .

"The facts . . . present only one issue:

"Was the action of the city council proper in proceeding further after protest was made by the owners of more than one-half of the value of the territory as shown by the last equalized assessment roll?

"Stating the issue in another fashion:

"May the value of all publicly owned property be included for protest purposes if no owners of publicly owned property have filed written protest to the annexation of their property?

". . . In light of the lack of protests by public property owners, the value of publicly owned property not shown on the assessment roll should not have been included for protest purposes.

"Government Code section 35313 contains the relevant provisions concerning the type and number of protests which can prevent an annexation. The legislative history of this section is necessary to a proper understanding of the problem here involved. The provision first appeared as one sentence among other provisions in California Statutes 1899, chapter XLI. pages 37-39, section 1:

" 'In the event that the owners of more than one-half of the land so sought to be annexed, or the owners of any single tract of land exceeding five acres in area, file remonstrances against said annexation, said protestations shall be sustained by said board of supervisors, and shall be a bar to any further

proceedings under the provisions of this act for the period of one year.'

"In 1929 the provision was amended to read (Calif. Stats. 1929, ch. 436, pp. 800-801, § 1):

" 'In the event that the owners of more than one-half of the land so sought to be annexed, file remonstrances against such annexation, said protestations shall be sustained by said board of supervisors and shall be the bar to any further proceedings under the provisions of this act for the period of one year.'

"In 1934 in *Shepherd* v. *Board of Supervisors,* 137 Cal. App. 421 [30 P.2d 578], the court construed this amended version. There two-thirds of the territory to be annexed was public land and one-third private. The owners of a majority of the private land protested, but no protests were filed by the one public owner. The court held that the owners of more than one-half of the land sought to be annexed had not protested, and that, therefore, the annexation was valid and all land, public and private was properly considered in determining protests. The court there stated at pages 430-431:

" '. . . Under the circumstances of this case, it is undoubtedly true that since the city owns two-thirds of the entire tract, a protest of owners of the entire privately owned portion thereof would be insufficient to defeat the petition. This may be unfortunate for the private owners, but the statute makes no distinction between public or private owners of land.'

"In 1937 (Calif. Stats. 1937, ch. 252, p. 557) the Annexation of Uninhabited Territories Act of 1899 was repealed. In 1939 the Legislature enacted the Annexation of Uninhabited Territories Act of 1939 (Calif. Stats. 1939, ch. 297, p. 1565). Section 6 of the act in regard to the nature or type of protest which would preclude an annexation stated:

" '. . . if it be found that protest is made by the owner or owners of one-half of the value of the territory proposed to be annexed according to the last equalized assessment roll, no further proceedings shall be taken in connection with the proposed annexation.'

"The obvious purpose of this enactment was to avoid the harsh result of *Shepherd* v. *Board of Supervisors,* 137 Cal. App. 421 [30 P.2d 578]. Prior to the repeal in 1937 of the Uninhabited Annexation Act of 1899, an uninhabited annexation could be stopped by protest of the owners only if the owners of at least one-half of *all* the land to be annexed protested, regardless of the value of the land. Thus large

tracts of unprotesting public land could at that time frustrate private owners who opposed uninhabited annexations. In the new provisions of 1939, the test became *value* of the *territory* according to the *last equalized assessment roll*. Since most public land does not appear on the assessment roll, or is not given a value if it does so appear, this left most public land out of the calculations concerning legally effective protests.

"In 1949, acts relating to the alteration of city boundaries were codified in the Government Code (Calif. Stats. 1949, ch. 79, pp. 116-143; Gov. Code §§ 35000-35951). In that codification, the provisions relating to the nature and type of protest necessary to halt an annexation became Government Code section, 35313:

" '. . . If protest is made by the owners of one-half of the value of the territory as shown by the last equalized assessment roll, further proceedings shall not be taken.'

"The substance was unchanged from the uncodified version of 1939.

"The California Supreme Court in *American Distilling Co.* v. *City Council, Sausalito,* 34 Cal.2d 660 [213 P.2d 704, 18 A.L.R.2d 1247] considered Government Code section 35313 as it was enacted in 1949 involving an uninhabited annexation in which was located private property as well as a large parcel of land owned by the United States Government. No protest was registered by the publicly owned property, while all of the owners of the privately owned property did protest. In invalidating the annexation, the court at page 666 stated:

" 'As pointed out in *Shepherd* v. *Board of Supervisors* (1934), 137 Cal.App. 421 [30 P.2d 578], at page 429, also involving annexation proceedings, *if it should appear that protests were filed by a sufficient number of owners according to the statutory measure, the board would be without authority to do anything except to sustain the protests and terminate the proceedings.* The statute then in force (Stats. 1899, p. 37; repealed by Stats. 1937, p. 557), designated the owners of one-half of the land sought to be annexed as the guide by which the sufficiency of the protests was to be determined. That case involved publicly-owned land which comprised more than one-half of the uninhabited land annexed. Thereafter the Legislature repealed the act and adopted the present statute for the obvious purpose of affording to private property owners a means of making effective protest. As applied to the present case the new statute requires that protests filed

by the owner or owners of one-half of the 1947 assessed value of the territory sought to be annexed should be the measure of sufficiency. Without dispute the property of the petitioner was the only property in the territory which had assessable value in that year.

" 'The trial court's finding of sufficiency followed from the indisputable facts and required the conclusion that *the city council had no discretion to do other than comply with the statute and terminate the annexation proceedings. . . .*' (Italics added.)

"In 1951, the section was again amended (Calif. Stats. 1951, ch. 1702, p. 3914, § 5) and then provided a form and substance similar to the version in effect at the time of . . . Annexation . . .:

" 'If protest is made by the owners of one-half of the value of the territory as shown by the last equalized assessment roll, or if protest is made by public and private owners equal to one-half of the value of the territory proposed to be annexed as determined by the legislative body, further proceedings shall not be taken.'

"In 1955 Government Code section 35313 was further amended and took the form in effect at the time of the . . . Annexation . . . (Calif. Stats. 1955, ch. 1948, § 5, p. 3580:

" 'If protest is made by the owners of one-half of the value of the territory as shown by the last equalized assessment roll, or if protest is made by public and private owners equal to one-half of the value of the territory proposed to be annexed, further proceedings shall not be taken. The value to be given publicly owned property for protest purposes shall be determined by the legislative body. As used in this article, "value of the territory" means the value of the land and improvements thereon.'

"The obvious purpose of the amendment in 1951 as continued and enlarged in 1955 was to provide the owners of public property with a method of filing protests to annexations which was denied them by the prior provisions as construed by *American Distilling Co.* v. *City Council, Sausalito,* 34 Cal. 2d 660, 666 [213 P.2d 704, 18 A.L.R.2d 1247]. However, the Legislature clearly did not wish to return to the rule of *Shepherd* v. *Board of Supervisors,* 137 Cal.App. 421, 430 [30 P.2d 578] under which private owners were without an effective protest whenever large parcels of public property were located in territories proposed to be annexed and the public owners did not wish to protest.

"Section 35313 as it presently stands provides two alternatives the existence of either of which could bar a city legislative body from further proceedings to annex uninhabited territory. The first alternative provides that if protest is made by the owners of one-half of the value of the territory as shown by the last equalized assessment roll, further proceedings shall not be taken. The second alternative is that if protest is made by public and private owners equal to one-half of the value of the property proposed to be annexed, further proceedings shall not be taken. It appears that if either alternative exists annexation is prohibited.

"As applied to the present annexation the language of the section appears to be clear. The latter alternative concerning protest by both private and public owners would seem to have no effect on the first alternative affording to private owners the means of making effective protest despite the amount of protesting or unprotesting publicly owned property involved. The latter alternative would appear to be relevant and useful only when protests by owners whose properties appear on the assessment roll are insufficient to halt the proceedings. It is only when protest has also been by public owners that the legislative body of a city has the duty or right to determine the value to be given to publicly owned property."

In this case no further proceedings should have been taken after the hearing since, among other things, protests were made by the owners of one-half of the value of the territory as shown by the last equalized assessment roll.

Appellants also contend that the protests were not in proper form and did not comply with the provisions of the codes. A reading of the protests indicates that there is no merit to such contention. Furthermore, the appellants treated the documents as good and sufficient protests and acted upon them accordingly. Also, they treated the protests as if they included all of the respondents' property, even though a part thereof was described by metes and bounds rather than generally. (See *Foth* v. *City of Long Beach*, 125 Cal.App.2d 520, 529 [270 P.2d 868].)

In our opinion the Legislature carefully designed a procedure whereby the rights of private property owners and the public are protected in their right to protest annexation proceedings. Cities have been given great powers in the matter of annexations and with that power goes an equal responsibility to see to it that the power is not abused. It is of

considerable importance to many landowners whether they be in a city or out of a city, and the utmost fair play by city authorities is called for. In *Hubbell* v. *City of Los Angeles,* 142 Cal.App.2d 1 [297 P.2d 724], it was appropriately set forth (pp. 5-6):

"It requires no citation of authority in support of the proposition that the governing bodies of municipalities stand in a different and higher category than mere employees and directors of a private corporation. Whatever other functions they may be called upon to perform, members of a municipal council or other public body are at all times trustees of the public welfare. Obviously, such a trusteeship does not call for competition and strife between such bodies and the interested members of the public; nor between the bodies of neighboring municipalities. These salutary precepts do not appear to have been recognized or followed in the attempted annexation. . . .

.   .   .   .   .   .   .   .   .   .

"Of paramount importance in proceedings such as those here involved is the matter of public hearings, at which interested persons are entitled to be heard. If such hearings are permitted to degenerate into a mere token procedure, or if the administrative body proceeds arbitrarily and without regard to the protests filed, then the statutory requirements mean nothing, and those members of the public most vitally concerned lose all protection."

Judgment affirmed.

White, P. J., and Herndon, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.