[Civ. No. 4162.   Fourth Dist.   Feb. 19, 1951.]

THE CITY OF ANAHEIM et al., Appellants, v. THE CITY OF FULLERTON et al., Respondents.

[Civ. No. 4163.   Fourth Dist.   Feb. 19, 1951.]

HENRY G. MEISER, Petitioner, v. THE CITY COUNCIL OF THE CITY OF ANAHEIM et al., Appellants.

Preston Turner, S. B. Kaufman, Robbie Kaufman and McFadden, Turner & Owens for Appellants.

C. R. Allen, City Attorney, Lloyd S. Verry, June E. Blodget and L. W. Blodget for Respondents.

BARNARD, P. J.—These causes involve annexation proceedings respecting lands, lying between Fullerton and Anaheim, along Spadra Road (Highway 101) which runs north and south, and along Orangethorpe Avenue, which runs east and west about 600 feet south of the Fullerton city limits, crossing Spadra Road at right angles.

On September 11, 1948, a proceeding was started under the Annexation Act of 1913, as amended (2 Deering's Gen. Laws, Act 5159), to annex to Fullerton a strip 660 feet wide and 3,800 feet long, extending south from the Fullerton city limits to a point 675 feet north of the Anaheim city limits,

and including Spadra Road with 300 feet on each side. A notice of intention to circulate a petition was published on that day, and an affidavit of publication was filed with the city clerk on September 15. On September 28, the Fullerton city council adopted a resolution approving the intention to circulate that petition, and the petition was received by the city clerk on October 14.

In the meantime, a petition was filed with the city clerk of Anaheim on September 18, pursuant to the Annexation of Uninhabited Territory Act of 1939 (2 Deering's Gen. Laws, Act 5162), seeking to annex to Anaheim a strip 30 feet wide and 4,150 feet long, lying immediately south of Orangethorpe Avenue and extending from the Anaheim city limits, at its east end, to a point across Spadra Road and west of the land involved in the Fullerton proceeding. On September 18, the Anaheim city council purported to adopt a resolution designating this as the Orangethorpe Annexation and fixing a time for protest. On September 25, the same two petitioners filed another petition seeking to annex to Anaheim a strip 60 to 80 feet wide and about 3,100 feet long, running from the south line of Orangethorpe Avenue to the Anaheim city limits. This strip consisted of Spadra Road only for the south third of its length, that road and 10 feet on the west for another third, and the road and 10 feet on each side for the northerly third. For most of its distance it ran through the exact center of a portion of the property covered by the Fullerton proceeding. On September 25, the Anaheim city council purported to adopt a resolution designating this as the South Spadra Annexation and fixing a time for protest. On October 4, further proceedings under the two resolutions were enjoined by an alternative court order which was made peremptory on March 29, 1949.

On March 30, 1949, the Fullerton city council passed a resolution in connection with that proceeding, setting April 19 as the day for hearing protests and declaring an intention to call an election. On April 19, it heard and determined that there were no protests and passed a resolution calling an election for June 7, 1949. On June 7 such an election was held, 20 votes being cast, 17 for and three against annexation.

On March 29, the Anaheim city council passed a resolution again acknowledging receipt of the Orangethorpe and Spadra petitions on September 18 and 25, and ordering that they

be considered at the next meeting. On April 12, it passed a resolution fixing the time for hearing protests against the Orangethorpe Annexation and also passed a resolution fixing the time for hearing protests against the South Spadra Annexation. On April 29, the time fixed therefor, the Anaheim city council met and heard protests against both of those proceedings. In the Orangethorpe proceeding it was determined that the protests were insufficient. The hearing in the South Spadra matter was partly heard and continued to May 3, when it was determined that the protests were insufficient. On May 10, the Anaheim city council passed Ordinance 742 approving the Orangethorpe Annexation, and also Ordinance 743 approving the South Spadra Annexation. Each of these ordinances, which were signed by the mayor and certified by the clerk on May 11, provided that it should become effective 30 days ''from and after its final passage.'' On June 6, 1949, prior to their effective date, the city clerk forwarded certified copies of these ordinances to the Secretary of State. On June 9, 1949, the Secretary of State issued certificates certifying that these ordinances, respectively, were filed in his office on June 9, 1949. On June 6, 1949, an alternative writ of mandate was issued on the application of the city of Anaheim commanding the city of Fullerton to take no further steps in its annexation proceeding other than to canvass the returns of the election and to record the results thereof. On June 9, 1949, a writ of certiorari was issued directing the city council of Anaheim to return a transcript of all proceedings in connection with the Orangethorpe and South Spadra Annexations, and to desist from further proceedings in the matters to be reviewed.

The mandate and certiorari proceedings were consolidated and heard together. The court found the general facts as above stated and further found that the property in the Orangethorpe Annexation proceeding, consisting of a strip of land 30 feet wide and 4,150 feet long, is contiguous to the Anaheim city limits only at its easterly end for a distance of 30 feet; that the property described in the South Spadra Annexation is contiguous to the Anaheim city limits at its southerly end for a distance of 60 feet, being the width of Spadra Road at said junction; that the two (Anaheim) petitions were each signed by only two petitioners who own larger parcels at the intersection of Orangethorpe Avenue and Spadra Road, a part of the land of each petitioner being included in each of those petitions; that the proposed Orange-

thorpe Annexation and South Spadra Annexation "in essence and in fact were a single proceeding"; that said proceedings "circumvent, evade and avoid the intent and meaning" of the statutes of this state relative to the annexation of uninhabited territory, in that inhabited territory which was thus sought to be annexed to Anaheim was thereby divided into two parcels "each of which in itself was found by said city council to be inhabited by less than twelve (12) qualified electors, but which taken together in one parcel was found to be inhabited by more than twelve (12) resident, qualified electors"; that said territory was and is inhabited territory and said proceedings were a part of a subterfuge and illegal scheme and plan whereby Anaheim sought to annex property inhabited by 12 or more qualified electors by dividing the property into more than one parcel, each containing less than 12 qualified electors; that said petitions were signed and said actions, resolutions and ordinances were taken, passed and adopted as parts of one proceeding, contrary to law and without or in excess of the jurisdiction of the Anaheim city council, and for the purpose of preventing the registered voters residing on the property, portions of which they sought to annex, from voting upon the question of such annexation; that while the Anaheim city council found and determined that there were 18 qualified electors residing on the parcels of property, portions of which were sought to be annexed to Anaheim, eight on the Orangethorpe Annexation property and 10 on the South Spadra property, there were in fact not less than 32 qualified voters residing on the combined property, eight on the part included in the Orangethorpe Annexation and 24 on the part included in the South Spadra Annexation; and that none of the areas proposed to be annexed to Anaheim under either of those petitions were separately assessed but each was merely a portion of a larger parcel, and the Anaheim city council computed the value of such portion of each parcel by dividing the assessed value by the square footage of the larger parcel and multiplying the result by the square footage of the area proposed to be annexed.

The court further found that these Anaheim proceedings were designed and intended to surround and enclose certain property by a strip of land 30 feet wide on the north and 10 feet wide on a part of the west and by the adjacent street on the balance of the west, and by the city limits of Anaheim on the other two sides in order to prevent the owners of

such surrounded property from annexing their property to Fullerton without in any manner bestowing any benefits on such surrounded property or the owners thereof; that no further proceedings have been taken by the city of Anaheim subsequent to the receipt of certificates from the Secretary of State; and that the affidavits of completion referred to in chapter 472 of the Statutes of 1939 have not been filed.

As conclusions of law, the court found that the petitions filed and presented to the city council of Anaheim were filed and presented as a part of an illegal plan and scheme of avoiding and circumventing the laws of this state relative to the annexation of inhabited territory to a municipal corporation, and for the further purpose of preventing the residents and registered voters of the territory involved from voting on the question of the annexation of such territory to the city of Fullerton; that all acts, resolutions, findings of fact and ordinances passed or adopted by the city council of Anaheim in this connection were passed or adopted in furtherance of and as a part of the same plan and scheme to evade and circumvent the requirements of the applicable laws, and were and are in essence a part of one proceeding and illegal and void; that in receiving the two petitions and adopting the resolutions and ordinances above referred to the city council of Anaheim acted in excess of its jurisdiction and in violation of the Annexation Act of 1913 and the Annexation of Uninhabited Territory Act of 1939, as amended; and that the proceedings purported to be carried through as the Orangethorpe Annexation and the South Spadra Annexation by the city of Anaheim are, and each is, null and void. Judgment was entered adjudging and decreeing that the city council of Anaheim has acted without and in excess of its jurisdiction and in violation of law, in carrying through these annexation proceedings, and declaring that each of these proceedings is null and void. This appeal followed.

It is first contended that since these annexations to Anaheim had been completed their validity could be tested only by quo warranto proceedings, under the rule announced in *Crowl* v. *Board of Trustees*, 109 Cal.App. 214 [292 P. 985], and that certiorari is not the proper remedy. It is argued that section 10 of Act 5162 provides that when a certified copy of the ordinance is filed in the office of the Secretary of State the annexation is deemed complete, that the municipal corporation was then exercising dominion over the annexed

land in at least a de facto capacity, and that section 17 of Act 5162 provides that said act, and no other, shall apply to such a proceeding.

Section 8 of that act provides that "Immediately upon an ordinance approving the annexation becoming effective," the clerk shall transmit a certified copy of it to the Secretary of State. Section 10 provides that from and after the date of the filing of this document in the office of the Secretary of State the annexation shall be deemed to be complete. These ordinances did not become effective until June 9, but the clerk forwarded certified copies thereof on June 6. The provisions of the statute were not followed, and an attempt to shorten by several days the time fixed by the established procedure clearly appears. In the natural course of events, and had the statute been followed, these documents would not have been filed with the Secretary of State until after June 9 when the writ of certiorari was issued. As it was, the documents were filed the same day the writ was issued, there could have been neither an actual nor a de facto exercise of dominion over the annexed land by the city of Anaheim prior to the issuance of the writ, and the reasons for applying the usual rule were not here present.

Moreover, chapter 472 of Statutes of 1939 (2 Deering's Gen. Laws, Act 5163) was adopted eight days after Act 5162 and became effective on the same day. It covered all proceedings for the annexation of territory to a municipal corporation, and provided that no such proceeding shall be complete until the clerk has filed in the county recorder's office an affidavit stating that all requirements of law have been complied with, together with a map showing the change in boundaries, and further provides that the filing of this affidavit shall not be considered in lieu of any requirement in any annexation proceeding but shall be considered as an additional requirement. While that act was repealed in 1949, it was in force at the time here in question. We think that the provisions of Act 5163 were applicable here in spite of the provisions of section 17 of Act 5162, and that an additional requirement was thus provided for which was not complied with. Under the circumstances here appearing, certiorari was a proper remedy.

It is next contended that the court erred in finding that the South Spadra Annexation was inhabited territory since the court erroneously admitted evidence bearing on that question. It is argued that in reviewing the proceedings

in order to determine whether the city council had exceeded its jurisdiction the court was limited to the record in those proceedings, which showed that this territory was uninhabited and that further evidence could not be received. The rule relied on by the appellants, that such a review is limited to the record and that evidence dehors the record and contradicting it is not permitted, is subject to the qualification that no question of fraud is raised. Such a question was here raised and was inferentially and in practical effect found by the trial court, although the findings did not use the word "fraud." The record of the proceedings in the city council showed that the council found that there were 18 qualified electors involved in these two proceedings, eight on the Orangethorpe Annexation and 10 on the South Spadra Annexation, and the trial court found that there were at least 32 such voters involved in the two proceedings. The point here raised is immaterial if the annexation of these properties was unreasonably and unlawfully divided into two proceedings.

It is next contended that the Orangethorpe and South Spadra Annexation proceedings were not unreasonable or unlawful. It is argued that in *People* v. *City of Los Angeles,* 154 Cal. 220 [97 P. 311], and other cases, the annexation of narrow strips has been approved and the rule firmly established that the shape and extent of a strip of land sought to be annexed to a city is entirely a political matter and not one for the courts to decide.

In *People* v. *City of Los Angeles,* 154 Cal. 220 [97 P. 311], while the court said that the shape and extent of the area to be annexed was a matter for the people to decide, it also said that the courts would interfere "where some substantial provision of the law has been violated or where fraud was perpetrated in the matter of the boundaries or the extent of the annexed district." Both of these situations here appear. It may well be doubted whether the rule contended for may be so extended as to apply to the narrow strips here in question, which could not be used for any legitimate purpose, with the possible exception of a portion of Spadra Road. It is unnecessary to decide this question here.

It is next contended that the Orangethorpe and South Spadra Annexation proceedings were separate proceedings which did not evade the law. It is argued that the court's findings to the contrary are erroneous because no such issue was raised in the pleadings and because they are not supported by the evidence.

The contention that this issue was not raised by the pleadings is erroneous. The matter was sufficiently raised in the allegations of the petition for the writ, and the cause was largely tried on that theory.

The controlling question was, and is, whether the two Anaheim proceedings are in essence and effect one proceeding, which for reasons of subterfuge and evasion was carried through as two proceedings. In *People* v. *Town of Ontario,* 148 Cal. 625 [84 P. 205], it is said: "If the 'territory' proposed to be annexed, regarded as a whole, may fairly be said to be inhabited, the proceedings must be had under the (Inhabited Territory Act)." In *People* v. *City of Lemoore,* 37 Cal.App. 79 [174 P. 93], in discussing the question as to whether a parcel is inhabited or uninhabited the court said: "The fact of occupancy is not limited, manifestly, to the space occupied by the building or buildings, but extends to every portion of the single tract of which that space is an undivided part." That case quoted from *Wild* v. *People,* 227 Ill. 556 [81 N.E. 707], "The use of that strip (in that case 50 feet) . . . is a mere subterfuge and not a compliance with the law."

The intention in this case, as in most cases, must be drawn from the surrounding facts and the acts of the parties, and the entire record supports the court's conclusion in this regard. The Anaheim proceedings were started about a week after notice was published in the Fullerton proceeding. While separate petitions were filed in those proceedings a week apart, and acted upon by the city council the same day they were filed, those resolutions were declared void by court order. New resolutions were then adopted on the same day, and all subsequent acts in the two proceedings were taken at the same time and they were carried through together. There were too many voters for one proceeding and it may reasonably be inferred that separate petitions, by the same landowners, were filed for this reason. The only inference reasonably to be drawn from the facts, as a whole, is that two separate proceedings were used in order to annex at the same time a narrow strip of property, along the north and west sides of a large block of land, which could not otherwise be annexed as uninhabited territory; and also for the purpose of barring the proceeding already started by the city of Fullerton, by taking the shorter and quicker steps permitted by the Annexation of Uninhabited Territory Act. An attempt to evade the purport and intent of the statutes in this connection

clearly appears, and the court's findings and conclusions are amply sustained by the record. Some contention is made that the Anaheim proceeding had priority over the Fullerton proceedings because the petitions were received by the Anaheim council before the petition was received by the Fullerton council. After having been enjoined from proceeding under the resolutions first adopted the Anaheim city council purported to again proceed, on March 30, 1949, under the original petitions filed on September 18 and 25. This would seem to be a further evasion and violation of the spirit and intent of the law since section 3 of Act 5162 provides that when such a petition is filed the city council must "without delay" pass a resolution giving notice of such proposed annexation. Whether or not that be true, the Fullerton proceeding was actually started first, and any claim of priority for the Anaheim proceedings, based on the fact that a petition can be filed in less time under the provisions of the Annexation of Uninhabited Territory Act, is unavailable where the entire proceedings are void. That act was never intended to be used to circumvent and evade the act for the annexation of inhabited territory.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

The petitions for a rehearing were denied March 20, 1951, and appellants' petition for a hearing by the Supreme Court was denied April 19, 1951.