[Civ. No. 25421.   Second Dist., Div. Three.   Mar. 30, 1962.]

COUNTY OF LOS ANGELES, Plaintiff and Appellant, v. CITY COUNCIL OF THE CITY OF LAWNDALE, Defendant and Respondent.

Harold W. Kennedy, County Counsel, and David D. Mix, Assistant County Counsel, for Plaintiff and Appellant.

Graham A. Ritchie, City Attorney, and Herman F. Selvin for Defendant and Respondent.

THE COURT.—This is an appeal from a judgment denying a peremptory writ of mandate, denying a writ of review and discharging a temporary stay order, and for costs in favor of respondent. The judgment was rendered upon the conclusion reached by the trial court that quo warranto was the sole remedy available to appellant county to test the validity of the annexation proceeding.

The controversy rests in the following background: Appellant, County of Los Angeles, was the owner of a parcel of land within its boundaries known as Alondra Park, which had been designated by the board of supervisors as a regional park. The park was contiguous to the boundaries of the respondent City of Lawndale, a municipal corporation organized under the general laws, and such park was uninhabited territory as defined by article V, title 4, division 2 of the Government Code.

The City of Lawndale, desirous of annexing the park did on June 20, 1960, legally adopt a resolution initiating such proceedings and fixed the time of 8 p. m. on August 1, 1960, for the hearing of protests. The proceeding was designated as "Annexation No. 4." The city council met at the appointed time and adjourned to the hour of 3 p. m. on August 2, 1960, for the purpose of further considering and ruling on a written protest which had been filed by one Cecil B. Hollingsworth, designated in the minutes of the meeting of August 1, 1960, as "lessee of Alondra Park County Club, Inc." At the meeting on August 2, 1960, the city council found that no protests to the annexation had been filed and thereupon there was

introduced and adopted as an "urgency" measure the ordinance of annexation. Such ordinance was filed with the Secretary of State on August 3, 1960. The "urgency" claimed by respondent city, and as recited in the ordinance of annexation is as follows:

"*Section 6.* This Ordinance is hereby declared to be an urgency measure required for the immediate preservation of the public peace, health and safety, and shall take effect and be in force from and after its passage and filing, as required by law. The following is a specific statement showing the urgency of this Ordinance: That valuable buildings, extensive public recreational facilities and potentially dangerous conditions are maintained upon said property and that it is essential that maximum police, fire and municipal type protection be given to said area immediately because of said activity.

"*Section 7.* The City Clerk shall certify to the adoption of this Ordinance and cause the same to be published or posted in the manner required by law and this Ordinance shall take effect immediately upon its adoption."

In the meantime, and on July 26, 1960, the board of supervisors of appellant county, in regular session, adopted a resolution protesting the proposed annexation. After the adoption thereof, and on the same day, the chief deputy clerk of the board told the city clerk of the respondent city that such a resolution had been adopted, showed the original thereof to the city clerk and offered then and there to deliver a certified copy of such resolution to him. The city clerk stated that he could not wait for such copy and that the City of Lawndale would accept and honor any protest received through the United States mail. (See petition and findings.) The chief deputy clerk of the board of supervisors then told the city clerk that such protest would be mailed to the city. On July 26, 1960, a certified copy of the resolution of protest was deposited in the United States mail as certified mail, return receipt requested, addressed to the city council of respondent city at the latter's proper address. On July 28, 1960, an employee of the post office in the City of Lawndale took the letter of protest to the office of the city clerk but was unable to deliver it because of his arrival prior to the hour at which the office normally was open. Such postal employee then took the letter back to the local post office after having left at the office of the city clerk a form notice of certified mail on hand. Such notice was a standard form which

notified the addressee of the letter, that certified mail, return receipt requested, had been attempted to be delivered and instructing the addressee to call for such letter at the local post office. Neither the city clerk nor any other officer or employee of respondent city attempted to gain possession of the letter of protest until August 5, 1960, eight days after its arrival at the local post office, nor did any such officer or employee inform any officer or employee of the county that the protest had not been received. On August 1, 1960, at the meeting set aside for the hearing of protests, no evidence was taken or heard as to the existence of a protest on behalf of the county. On the morning of August 2, 1960, and prior to the time of the meeting of the city council held the same day, and at which time the resolution of annexation was adopted, the mayor and members of the city council of the respondent city were present at a regular session of the board of supervisors, at which session such board reaffirmed its action of protest taken on July 26, 1960.

The petition for writ of review and mandate was filed on August 30, 1960, and the alternative writ was issued the same day. Under these circumstances it appears that the city had actual notice of the protest through a responsible officer, and represented that it would treat it as having been properly filed if received through the United States mail. The county in reliance upon this representation, placed the protest in the mail in time for it to have reached the city council before the expiration of the time allowed for the filing of protests. The trial court found that on July 28, 1960, a postal employee left at the office of the city a standard form notice in which it was stated that an attempt had been made to deliver certified mail and that the addressee should call for it at a designated local post office. It was further found that neither the city clerk nor any other officer or employee of the city, nor anyone else, attempted to gain possession of the letter until August 5, 1960. It is manifest that the protest would have been before the city council at its meeting of August 1, 1960, if the city had heeded the notice left at its office. Under such circumstances the city cannot take advantage of its own fault.  ▉  The governing bodies of municipalities stand in a different and higher category from that of mere employees and directors of a private corporation. Whatever other functions they may be called upon to perform, members of a municipal council or other public body are at all times trustees of the public welfare. Obviously, such trusteeship does

not call for competition and strife between such bodies and the interested members of the public; nor between the bodies of neighboring municipalities. These salutary precepts do not appear to have been recognized or followed by the responsible representatives of respondent city in its attempt to annex the appellant's property. *Hubbell* v. *City of Los Angeles*, 142 Cal. App.2d 1 [297 P.2d 724], at p. 5.

Under the circumstances here shown, there was sufficient compliance by the county with the provisions of section 35312, Government Code, to place its protest on file prior to the time set for the hearing of such protests, and it was the duty of the city council to take cognizance of it. (Gov. Code, § 35313; *City of El Monte* v. *City of Industry*, 188 Cal.App.2d 774, 780 [10 Cal.Rptr. 802].) Such protest being properly before the city council operated as a bar to any further proceedings in the matter of the annexation of appellant's property, and the city had no alternative but to abandon such proceedings. (*Heller* v. *City Council*, 157 Cal.App.2d 441, 446 [321 P.2d 97]; *People* v. *City of Richmond*, 141 Cal.App. 2d 107, 116 [296 P.2d 351]; *American Distl. Co.* v. *City Council, Sausalito*, 34 Cal.2d 660, 665 [212 P.2d 704, 18 A.L.R.2d 1247].)

The annexation of territory to a city is governed by the general laws of the state and is not a municipal affair (*County of San Mateo* v. *City Council*, 168 Cal.App.2d 220 [335 P.2d 1013]), and where a city council proceeds under legislative requirements relating to annexation, such requirements constitute the measure of power to be exercised. (*Kleiber* v. *City & County of San Francisco*, 18 Cal.2d 718, 724 [117 P.2d 657]; *American Distl. Co.* v. *City Council, Sausalito, supra*, 34 Cal.2d 660, 664; *Morin* v. *City Council*, 109 Cal. App.2d 268 [240 P.2d 688].)

The effective date of a city ordinance is governed by section 36937 of the Government Code, which provides in part as follows: "Ordinances take effect 30 days after their final passage. An ordinance takes effect immediately, if it is an ordinance: . . . (b) For the immediate preservation of the public peace, health or safety, containing a declaration of the facts constituting the urgency, and is passed by a four-fifths vote of the city council." Here the city council undertook to pass the ordinance of annexation as an urgency measure so as to make it effective on the date of its passage, by declaring that an emergency existed which required it to act to preserve

the public peace, health and safety in an area over which the city had no jurisdiction. ▮ The action of a city council in the passage of an ordinance for the protection of the public peace, health and safety of the citizens of the community, is the exercise of the police power of such city, and the exercise thereof, with certain exceptions, not here involved, is limited to the existing boundaries of the city. (*Miller* v. *Fowle,* 92 Cal. App.2d 409, 411 [206 P.2d 1106] ; *City of Oakland* v. *Brock,* 8 Cal.2d 639, 641 [67 P.2d 344].) ▮ The factual determination of "urgency" by a city council in the situation here presented is not conclusive on review. (*People* v. *City of Richmond, supra,* 141 Cal.App.2d 107, 117; *In re Kazas,* 22 Cal. App.2d 161, 167 [70 P.2d 962] ; *In re Newell,* 188 Cal. 762 [207 P. 371].) ▮ The ordinance of annexation here under consideration was not, as a matter of law, an "urgency" measure. The ordinance, if otherwise valid, did not take effect until September 1, 1960, 30 days after its adoption (Gov. Code, § 36937), and the filing of a certified copy thereof with the Secretary of State on August 3, 1960, was premature and in violation of the provisions of Government Code, section 35316. (*In re Hoffman,* 155 Cal. 114 [99 P. 517, 132 Am.St. Rep. 75] ; *Morgan* v. *City of Long Beach,* 57 Cal.App. 134, 139 [207 P. 53].) ▮ There could have been neither an actual nor de facto exercise of dominion over the annexed territory by the City of Lawndale until at least September 1, 1960, a date subsequent to the issuance of the alternative writ of mandate. (*City of Anaheim* v. *City of Fullerton,* 102 Cal.App.2d 395, 401 [227 P.2d 494].) Either mandamus or certiorari, therefore, was a proper remedy to test the validity of the annexation proceedings prior to the time that quo warranto became available. (*Jefferson Union Sch. Dist.* v. *City Council,* 129 Cal.App.2d 264 [277 P.2d 104] ; *American Distl. Co.* v. *City Council, supra,* 34 Cal.2d 660, 666.)

▮ It further appears that the ordinance of annexation was first introduced in the city council on August 2, 1960, and was adopted on the same date. Section 36934 of the Government Code requires a waiting period of five days from the date of the introduction of such an ordinance, it not being an urgency measure, and the date of its passage. In adopting the annexation ordinance in violation of the clear mandate of the law, the city council of respondent city acted in excess of the power granted by the Legislature in annexation proceedings. Such ordinance was void and could not have been the basis for the assertion of any right under the law to annex

territory. (*San Pedro etc. R.R. Co.* v. *City of Long Beach,* 172 Cal. 631, 634 [158 P. 204].)

The judgment is reversed and the cause is remanded with directions to the trial court to enter judgment annulling the annexation proceedings.

A petition for a rehearing was denied April 23, 1962, and respondent's petition for a hearing by the Supreme Court was denied May 23, 1962.