[Civ. No. 456.   Fifth Dist.   Feb. 18, 1965.]

LEWIS GUERRIERI et al., Plaintiffs and Appellants, v. CITY OF FONTANA et al., Defendants and Respondents.

Surr & Hellyer and Robert J. Bierschbach for Plaintiffs and Appellants.

William A. Flory, City Attorney, for Defendants and Respondents.

CONLEY, P. J.—Lewis Guerrieri and Capistrano Winery & Vineyard Company, a corporation, are property owners within the exterior boundaries of "South Sierra Annexation," which was proposed and accepted by the City Council of Fontana and approved by the judgment of the court below; their application to that court for a writ of mandate or a writ of review to prevent the annexation was denied and this appeal followed.

The territory involved consists of a long and narrow "dog-leg" leading from the city boundaries to a substantial area of included hilly land, principally planted to vineyards and consisting of about 2,000 acres near the boundary of San Bernardino and Riverside Counties. The named respondents are the City of Fontana, a municipal corporation, the city council as a group, the city clerk, and the individual councilmen.

Pursuant to section 35002 of the Government Code, the City of Fontana originally submitted the proposal to annex the territory to the San Bernardino Boundary Commission, which, on May 16, 1963, met, considered the plan, and thereafter issued a report, finding that the annexation was "inimical to the public interest" and recommending that it be adjusted to comply with the standards and policies of the commission. The City of Fontana did not stay its determined course as a result, but acting through its council on the 21st day of May, 1963, adopted its resolution No. 63-46 giving notice of the proposal to annex the territory and setting June 19, 1963, at 7:30 p.m. as the date and time for hearing protests.

Accordingly, on June 19, 1963, the protest hearing was held, as scheduled, at the council chamber of the city council, at which time and place written protests by owners of property within the outer boundaries of the proposed annexation were received and tabulated. It is conceded that valid protests were filed by owners of property valued at $327,314. The city council determined that the total value of the property within the exterior boundaries of the proposed annexation for protest purposes was $779,320, and adopted resolution No. 63-61 declaring that a majority protest had not been made. Included within the figure of $779,320 was the sum of $386,470, which was adopted as the valuation of the Kaiser Foundation Hospital property located in the "dog-leg"; the county assessor had valued the hospital property at that figure, but he had

also allowed an exemption on it amounting to the sum of $267,810, so that the net value of the Kaiser Foundation Hospital property with the exemption deducted was only $118,660. If the exemption of $267,810 should have been excluded from the valuation of the property to be annexed, the value of the protesting property would have been approximately 64 per cent of the total; thus, under that contingency, the protestants would have owned more than 50 per cent of the valuation of the property and the proposed annexation would necessarily fail. (Gov. Code, § 35313.)

It is clearly established that ownership of property within the boundaries of the proposed annexed territory is sufficient to support the issuance of a writ of mandate (*American Distilling Co.* v. *City Council of City of Sausalito,* 34 Cal.2d 660, 667 [212 P.2d 704, 18 A.L.R.2d 1247]). And the validity of annexation proceedings may be tested, before they have been completed, by any party beneficially interested, through a request for the issuance of a writ of mandate or a writ of review. (*City of Anaheim* v. *City of Fullerton,* 102 Cal.App.2d 395 [227 P.2d 494]; *Johnson* v. *City of San Pablo,* 132 Cal.App.2d 447 [283 P.2d 57]; *American Distilling Co.* v. *City Council of City of Sausalito, supra,* 34 Cal. 2d 660, 667.)

Annexation proceedings are not complete before the filing by the Secretary of State of a certified copy of the ordinance approving annexation after the lapse of a 30-day period subsequent to the adoption by the city council of an ordinance to that effect. (Gov. Code, § 36937.) (See: Gov. Code, §§ 35316, 35317, and 35318.)

Turning to the specific question at issue here, we find that Government Code, section 35313, as amended in 1961,* (Stats. 1961, ch. 1599, p. 3428) reads as follows: "At the time set for hearing protests, or to which the hearing may have been continued, the legislative body shall hear and pass upon all protests so made:

"(a) If privately owned property, and no publicly owned property is proposed to be annexed, further proceedings shall not be taken if protest is made by private owners of one-half of the value of the territory proposed to be annexed. The value given such property for protest purposes shall be that shown on the last equalized assessment roll if the property is

---

*(Gov. Code, § 35313, was also amended in 1963 in particulars not applicable to the conclusion reached in this opinion.)

not exempt from taxation. If the property is exempt from taxation, its value for protest purposes shall be determined by the county assessor in the same amount as he would assess on such property if it were not exempt from taxation.

"(b) If privately owned property and publicly owned property are proposed to be annexed in the same proceeding, further proceedings shall not be taken if protest is made either by private owners of one-half of the value of the privately owned territory proposed to be annexed or by public owners of one-half of the publicly owned territory proposed to be annexed. The value given privately owned property shall be determined pursuant to subdivision (a) of this section. The value given publicly owned property for protest purposes shall be determined by the county assessor in the same manner as is provided in subdivision (a) of this section for privately owned property, exempt from taxation.

"(c) As used in this article, 'value of the territory' means the value of land and improvements thereon.

"(d) The value for protest purposes to be given property held in joint tenancy or tenancy in common shall be determined by the legislative body in proportion to the proportionate interest of the protestant in such property.

"Determinations of the value of publicly owned property, or privately owned property exempt from taxation by the county assessor for protest purposes shall be obtained from the assessor by the protestant and submitted to the legislative body with the written protest.''

Appellants contend that the section must be construed to provide that unless protest is made by the owner of privately-owned property exempt from taxation the city council is not empowered to include in the ''value of the territory proposed to be annexed'' an estimate of the worth of such privately-owned property exempt from taxation, and must use the figures shown on the last equalized assessment roll entirely apart from the value of such exempt property. On the other hand, the respondents contend that, as found by the superior court, even if the value shown on the last equalized assessment roll is to be used pursuant to the second sentence of section 35313, subdivision (a), the full valuation as determined by the assessor before the allowance of the exemption must be adopted, and that the city council may obtain such valuation ''for protest purposes'' from the assessor pursuant to the last sentence of section 35313, subdivision (a), even when the owner of the property in question is not protesting.

It appears to us that a close examination of the crucial code section conclusively determines the question in the same sense that it was decided by the superior court. The opening sentence refers inclusively to "all protests" and it would seem that what follows in the section should be usable in connection with every angle of any protest. Under subdivision (a), which would be applicable because no public property is here involved, it is said: "If privately owned property and no publicly owned property is proposed to be annexed, . . ."; this preliminary statement apparently applies to all similar annexations, and it is laid down as the rule that: ". . . further proceedings shall not be taken if protest is made by private owners of one-half of the value of the territory proposed to be annexed."

This concept, considered separately and literally, requires that the value of all territory planned for annexation should be considered. The next sentence under subdivision (a) is that: "The value given such property for protest purposes shall be that shown on the last equalized assessment roll if the property is not exempt from taxation." The third sentence provides that: "If the property is exempt from taxation, its value for protest purposes shall be determined by the county assessor in the same amount as he would assess on such property if it were not exempt from taxation."

The use of the words "for protest purposes" seems to us to mean protest purposes of every kind and nature; the meaning cannot sensibly be limited to protest purposes only if the owner of such property exempt from taxation is a protestant.

Appellants lay stress upon the last sentence contained in the code section as amended in 1961, which states that any protestant of publicly-owned property, or privately-owned property exempt from taxation, may secure the valuation of such land from the county assessor for protest purposes and submit such data to the legislative body involved with its written protest. If there be such protests, this procedure is understandable and consonant with common administrative custom, but the code section does not purport to lay down a rule that no one else may secure from the assessor the valuation which he places on property exempt from taxation. We hold that the legislative body which is entitled to pass on the protests may also secure such facts from the assessor. It is apparent that after a long history of amendment of the code section in question, the county assessor was selected by the

Legislature as a person presumably without interest or prejudice and free to give his best judgment on the specified factual matters. (*Forest Lawn Co.* v. *City Council,* 60 Cal.2d 516, 523 [35 Cal.Rptr. 65, 386 P.2d 665].)

The appellants review in a scholarly fashion and at considerable length, the history of the provision for annexation and discuss the various problems which have arisen in connection with it, stressing particularly the holdings in *Heller* v. *City Council,* 157 Cal.App.2d 441 [321 P.2d 97], *Shepherd* v. *Board of Supervisors,* 137 Cal.App. 421 [30 P.2d 578], and *American Distilling Co.* v. *City Council of City of Sausalito, supra,* 34 Cal.2d 660, and contending that the value of property exempt from taxation should be considered only if owners of such property are protesting; however, we are not impressed by this argument, particularly in view of what appear to us to be the clear requirements of the present code section as amended.

The judgment is affirmed.

Brown (R. M.), J., and Stone, J., concurred.