[Civ. No. 33158. First Dist., Div. Three. Oct. 17, 1973.]

LORRAINE FRANCES NORLUND, Petitioner, v.
ALLEN R. THORPE, as City Clerk, etc., et al., Respondents;
SILVERADO HEIGHTS, INC., Real Party in Interest.

**COUNSEL**

Vic A. Fershko for Petitioner.

Frank L. Dunlap, City Attorney, Mary C. Dunlap and Coombs, Dunlap, Dunlap & Champlin for Respondents.

William R. Mackey and Heller, Ehrman, White & McAuliffe for Real Party in Interest.

## OPINION

**DRAPER, P. J.**—This proceeding in mandamus presents an issue not passed upon to date—is the resolution of a city council ordering annexation of uninhabited territory subject to referendum by the voters of the annexing city? The strongest argument advanced by the City of Napa against this right of referendum is that annexation of territory by a city is a matter of statewide concern and that the Legislature has specifically delegated the annexation power to the legislative bodies of the cities, thus excluding any right of the city electorate. We cannot accept that argument.

On August 7, 1972, the City Council of Napa adopted Resolution 6076, approving annexation of some 99 acres known as the Longwood Ranch. Only two days later, certified copy of the resolution was filed by the Secretary of State and certificate of filing issued. On September 5, 1972, petitioner here and others (an alleged total of 4,111) filed a petition seeking submission of the annexation resolution to vote of the people of the city in a referendum. The city council, also on September 5, refused to file the referendum petition. Petition for writ of mandate, filed October 5, sought to compel the city clerk to examine the petition and to certify the number of qualified electors signing it and, if the requisite percentage had signed, to compel the city council to call an election. Respondents, the city clerk and members of the city council, demurred. The demurrer was sustained without leave to amend, and petitioners sought mandate here.

A city has no inherent right to annex territory. Since such authority is not provided by the Constitution, it follows that all municipal authority in this field stems from state legislation. It is only in this very general sense that annexation of territory by a city is a matter of "statewide concern." The same is true of many, if not all, powers exercised by cities. Even a charter city holds home rule powers only after its charter is approved by the Legislature. The general subject of annexation by cities is, of course, a matter of statewide concern, but no one annexation by a particular city can be so denominated. It is difficult to imagine that Napa's annexation of a comparatively small area is a matter of public concern in San Diego, Crescent City, or Sacramento.

Of course, a city cannot, either by council action or vote of the electorate, exceed the limitations upon annexation enacted by the Legislature. Thus the council cannot ignore a protest filed by a county as owner of land within the area proposed to be annexed (*County of Los Angeles* v. *City Council,* 202 Cal.App.2d 20 [20 Cal.Rptr. 363]), nor can a city annex

land in another county. (*County of San Mateo* v. *City Council*, 168 Cal. App.2d 220 [335 P.2d 1013].) Upon a distinct ground, a city cannot enter a field which has been preempted by state legislation. (*Mervynne* v. *Acker*, 189 Cal.App.2d 558 [11 Cal.Rptr. 340].)

But these rules, although they undoubtedly show that annexation is a power derived from the state, do not in any way suggest that the Legislature, by the statutes providing for annexation of uninhabited territory, intended to vest all power in the city legislative bodies and to exclude the people's right of referendum. This is emphasized by reference to the former constitutional provision (art. IV, § 1) which "further reserved to the electors of each . . . city and town" the referendum power. It is hard to believe that the annexation act, adopted long before this constitutional provision was modified, intended to eliminate, by legislation alone, the very power which the Constitution granted to city voters.

There is no historical reason to attribute to the Legislature an intent to eliminate the right of referendum by voters of the annexing city. When the annexation act was adopted, as for decades before, growth was an overwhelming aim of cities and their voters. Bigness was considered a virtue in itself, and there is no suggestion that any legislator even considered the possibility of any voter's dissent from expansion of his own city. The heretofore unheard of opposition to bigness has only recently tended to surface. There is no reason to attribute to the Legislature's occasional reference to the legislative body of a city as a deliberate determination to bar referendum within the annexing city.

Moreover, the statute specifically provides (Gov. Code, § 35310.1) that "[a] resolution approving or disapproving the annexation shall be considered the same as an ordinance referred to in other sections of this article." Thus the resolution approving annexation could not become effective until 30 days after its adoption. (Elec. Code, § 4050.) A prime purpose of deferment of the effective date of ordinances is to preserve the right of referendum. It is reasonably inferable from section 35310.1 that the Legislature, far from seeking to limit the annexing power to the several city councils, affirmatively intended to preserve the voters' referendum right.

Annexation is not a legislative function so intermingled with quasijudicial and administrative functions that the latter render it an improper subject for referendum. (See *Newsom* v. *Board of Supervisors*, 205 Cal. 262, 271 [270 P. 676].)

■ Respondents argue that the annexation was complete when the Secretary of State filed a certified copy of Resolution 6076. But the statute specifically provides that a resolution of annexation "shall be considered the same as an ordinance" of annexation (Gov. Code, § 35310.1). The normal 30-day delay in effective date of an ordinance thus applies. (Elec. Code, § 4050.) Respondents rely upon subdivision (d) of that section, which excepts from the 30-day provision "ordinances governed by particular provisions of state law prescribing the manner of their passage and adoption." Since nothing in the Annexation of Uninhabited Territory Act shortens the 30-day period, the requirement applies. A statute (Gov. Code, § 35316) specifically provides that when a "resolution . . . approving annexation becomes effective," it shall be certified and transmitted to the Secretary of State (§ 35317) and shall be filed by him. "Annexation proceedings are not complete before the filing by the Secretary of State . . . after the lapse of a 30-day period subsequent to the adoption by the city council . . . ." (*Guerrieri* v. *City of Fontana*, 232 Cal.App.2d 417, 419 [42 Cal.Rptr. 781].)

It follows that the annexation proceeding was not complete either when the referendum petition was filed or when this mandate proceeding was commenced. ■ Mandate is a proper method of testing the validity of annexation proceedings before they are complete. (*City of Anaheim* v. *City of Fullerton*, 102 Cal.App.2d 395 [227 P.2d 494]; *Johnson* v. *City of San Pablo*, 132 Cal.App.2d 447 [238 P.2d 57]; *Guerrieri* v. *City of Fontana, supra.*) Thus we reject respondents' contention that quo warranto is the only available remedy. ■ The premature filing is ineffective to complete the annexation. There is no suggestion of any filing of the resolution with the Secretary of State after the lapse of 30 days and before petitioners' mandamus proceeding was begun below. We do not suggest that an annexation remains indefinitely in legal limbo merely because the certified copy of the annexation resolution or ordinance was improperly filed with the state. The doctrines of laches or estoppel might well, on appropriate facts, allow a very short period for attack upon the annexation even though the resolutions were prematurely filed. No such issue, however, is before us here.

■ The annexation resolution is subject to referendum. Let writ of mandate issue directing the city clerk to examine the referendum petition and to certify the number of registered electors who have properly signed that petition. If that number meets the required percentage, respondent city council is directed to order the holding of an election thereon.

Brown (H. C.), J., concurred.

**CALDECOTT, J.**—I dissent.

This annexation was pursuant to the Annexation of Uninhabited Territory Act of 1939 (Gov. Code, § 35300 et seq.); "uninhabited territory" being territory in which fewer than 12 registered voters reside. (Gov. Code, § 35303.) Petitioner is not challenging the procedure by which the city council approved Resolution No. 6076, the annexation resolution, but seeks only to have the resolution submitted to a referendum vote. The city council, however, rejected the referendum petition on the basis of the city attorney's advice that Resolution No. 6076 was not a proper subject for referendum.

Article IV, section 1 of the Constitution of California provides "[t]he legislative power of this State is vested in the California Legislature which consists of the Senate and Assembly, but the people reserve to themselves the power of initative and referendum." The power of initiative and referendum, thus, is a power reserved to the people, not a granted power. (*Ley* v. *Dominguez,* 212 Cal. 587, 593 [299 P. 713].) Such legislative powers will be liberally construed to uphold the power wherever reasonable. (*Collins* v. *City & Co. of S. F.,* 112 Cal.App.2d 719 [247 P.2d 362].) There are, however, necessary limitations upon the application of the initiative and referendum. As stated in *Newsom* v. *Board of Supervisors,* 205 Cal. 262, 271 [270 P. 676], "[a] determination that direct legislation was not intended to apply to all actions of subordinate governmental bodies involving in part the exercise of the legislative function is not new in this state." In line with this policy the courts have held that the right to initiative and referendum does not apply where the action is administrative or executive, as distinguished from legislative (*Simpson* v. *Hite,* 36 Cal.2d 125 [222 P.2d 225]); where the act is special or local in its nature (*Hopping* v. *Council of City of Richmond,* 170 Cal. 605 [150 P. 977]); if an essential governmental function would be seriously impaired (*Geiger* v. *Board of Supervisors,* 48 Cal.2d 832 [313 P.2d 545]); and when, in a matter of statewide concern, the Legislature has specifically delegated authority to the local governing board (*Mervynne* v. *Acker,* 189 Cal.App.2d 558 [11 Cal.Rptr. 340]). It is with this last circumstance that we are particularly concerned in the present case.

The Supreme Court in *People* v. *City of Long Beach,* 155 Cal. 604, 610 [102 P. 664], stated: ". . . the annexation of territory to a city is not a municipal affair, within the meaning of section 6 [article XI of the Con-

stitution],[1] but is a matter pertaining to the state at large and within its general powers and functions, and hence, that the general law upon that subject controls." (See also *People* v. *Oakland,* 123 Cal. 598, 604 [56 P. 445]; *People* v. *Town of Ontario,* 148 Cal. 625 [84 P. 205]; *County of Los Angeles* v. *City Council,* 202 Cal.App.2d 20 [20 Cal.Rptr. 363]; *County of San Mateo* v. *City Council,* 168 Cal.App.2d 220 [335 P.2d 1013].)

In *Mervynne* v. *Acker, supra,* the court discussed the problem of whether the Legislature had delegated to the local governing board of the city as distinguished from the voters the power to establish parking meter zones. In *Mervynne,* the city council had enacted ordinances providing for parking meters. An initiative petition proposing an ordinance to repeal the parking meter ordinances was submitted to the city. The city refused to process the petition on the ground that the proposed ordinance to repeal was not a proper subject for initiative. Vehicle Code section 22508, under which the city council had enacted the ordinance, provides "[l]ocal authorities [which term is defined in Vehicle Code section 385 to mean the legislative body of a city or municipality] may by ordinance provide for the establishment of parking meter zones, . . ." The court held that the Legislature by the careful wording of section 22508, literally and specifically, delegated the power over parking meter traffic regulation to the city council, stating at page 562 that "[w]hen, in a matter of statewide concern, the state Legislature has specifically delegated a particular authority to the governing board, our courts have uniformly held that the initiative processes do not ordinarily apply."

In the matter of annexation the Legislature has specifically delegated the authority to the governing board of a city.[2] As the governing board, in an annexation proceeding, exercises state power, not authority granted by the city charter, it is not unreasonable to preclude the people of a single city from exercising the power of initiative and referendum in a matter which is of statewide concern.

It is interesting to note that since the *Mervynne* decision, Vehicle Code section 22508 has been amended to provide "[a]ny ordinance adopted pursuant to this section establishing a parking meter zone or fixing rates of fees for such a zone shall be subject to local referendum processes in the same manner as if such ordinance dealt with a matter of purely local con-

---

[1]The repeal of section 6, article XI in 1970 does not affect the definition of "municipal affair."

[2]Government Code section 35300 et seq.

cern." If the Legislature had intended to preserve the right of referendum to the electors of the city in annexation matters, an amendment to the Annexation of the Uninhabited Territory Act of 1939, similar to that found in Vehicle Code section 22508, could have been adopted.

Petitioner maintains that Elections Code section 4050 and *Guerrieri* v. *City of Fontana,* 232 Cal.App.2d 417 [42 Cal.Rptr. 781], citing Government Code section 36937, provide that ordinances take effect 30 days after final passage and that these sections imply a legislative intent that initiative and referendum process applies to all ordinances except those specifically excepted. There is no question that if all ordinances went into effect immediately the effectiveness of direct legislation would be greatly impaired. The function of these sections, however, is limited to defining the effective date of an ordinance and they do not in themselves provide authority for the application of the initiative.

For the reasons stated above I would deny the writ.

Respondents' petition for a hearing by the Supreme Court was denied December 14, 1973.