[Civ. No. 39840. First Dist., Div. Three. Aug. 29, 1977.]

FRIENDS OF MOUNT DIABLO et al., Plaintiffs and Appellants, v. COUNTY OF CONTRA COSTA et al., Defendants and Respondents; BLACKHAWK CORPORATION et al., Interveners and Respondents.

**COUNSEL**

Laurens H. Silver and Linda A. Moody for Plaintiffs and Appellants.

John B. Clausen, County Counsel, and Victor J. Westman, Assistant County Counsel, for Defendants and Respondents.

Van Voorhis & Skaggs and Daniel Van Voorhis for Interveners and Respondents.

**OPINION**

**DEVINE, J.*—** The question before us is whether the resolution of the Board of Supervisors of Contra Costa County approving a reorganization of special districts is subject to referendum by the electors of the county. This question in turn must be answered by the solution to this problem: Is the action of the board of supervisors taken under the provisions of the District Reorganization Act of 1965 (Gov. Code, § 56000 et seq.) legislative action or is it an administrative decision made under the authority of the act and done in order to carry out state policy? Upon petition for writ of mandate, the trial court held that the resolution is an administrative action and denied referendum. We agree and we affirm.

On September 3, 1974, the board of supervisors approved by ordinance the rezoning of Blackhawk Ranch, a vast tract to the south of Mount Diablo State Park, to a Planned United District. This would allow

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

the construction of 4,200 housing units on 4,800 acres,[1] shopping areas, golf courses and recreation areas, and would require certain dedications for public parks and other purposes. The necessary environmental impact report (EIR) was approved. Although the rezoning ordinance was subject to referendum (*Dwyer* v. *City Council* (1927) 200 Cal. 505 [253 P. 932]; *Johnston* v. *City of Claremont* (1958) 49 Cal.2d 826 [323 P.2d 71]), the resolution was allowed to become law, unchallenged by the process of referendum.[2] Following the rezoning, Blackhawk made the necessary dedication of land and the Local Agency Formation Commission (LAFCO) decided that the spheres of influence for the Central Contra Costa Sanitary District and the East Bay Municipal Utilities District (EBMUD) should extend to and include all of Blackhawk's property, as permitted by Government Code section 56140 et seq.

On April 10, 1975, Blackhawk petitioned for reorganization of districts within the rezoned area for the purpose of accomplishing an orderly arrangement of the various districts in which the area is situated. Twenty-one changes from the existing patterns were made. The petition was duly heard by LAFCO of the county as directed by Government Code sections 56000-56550. It was necessary to obtain consent of Alameda County under provisions of sections 56012 and 56012.5 of the Government Code because that county is the "principal county" as to the EBMUD. The consent was obtained. The LAFCO staff, its executive officer and all of the districts recommended the reorganization, and LAFCO approved. As required by Government Code sections 56274 and 56291, the matter was then submitted to the Contra Costa County Board of Supervisors which, following the hearing required by Government Code section 56434, passed a resolution, the object of the referendum, ordering the reorganization as approved by LAFCO. Under the statute, the board of supervisors is required to approve or to disapprove the reorganization; it has no power to modify, but it may file a written application with LAFCO, requesting any addition, deletion, amendment or revision of LAFCO's resolution. (Gov. Code, § 56275.) The board requested certain amendments, one of which was granted and two were denied.

---

[1] Possibly (the record is not clear) a lesser number actually is in prospect.

[2] There is a suit against the county and Blackhawk Corporation in which the adequacy of the EIR is challenged, and the project is asserted to conflict with the county's General Plan. Writ of mandate was sought. This was denied by the superior court. An appeal is pending.

On July 3, 1975, the certification of completion of the reorganization was filed with the Secretary of State, and on July 8, 1975, the Secretary of State's certificate of filing was recorded in Alameda and Contra Costa Counties, thus causing the reorganization to be effective within the meaning of the District Reorganization Act (DRA). (Gov. Code, §§ 56452-56456.) Petition for referendum followed. The board of supervisors declined to take the action requested by the petitioners either to rescind the approval of the reorganization or to set the matter for election. The petition for writ of mandate prays that respondents be compelled to have an election on the reorganization or to repeal the resolution.

■ It is well to commence our discussion of the law by stating recognition of the principle stressed by appellants that the great reserved power of the people in respect of referendum (and initiative) must be construed liberally. (*Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 591 [135 Cal.Rptr. 41, 557 P.2d 473]; *Hunt* v. *Mayor & Council of Riverside* (1948) 31 Cal.2d 619, 628 [191 P.2d 426]; *Collins* v. *City & Co. of S.F.* (1952) 112 Cal.App.2d 719, 729 [247 P.2d 362]; *Mervynne* v. *Acker* (1961) 189 Cal.App.2d 558, 564 [11 Cal.Rptr. 340].)

But we note the limitation made by the Supreme Court in its opinion holding that general law cities may adopt zoning ordinances by initiative, *Associated Home Builders etc., Inc.* v. *City of Livermore, supra,* in the passage at page 596, footnote 14, which says: "We distinguish those decisions which bar the use of the initiative and referendum in a situation in which the state's system of regulation over a matter of statewide concern is so pervasive as to convert the local legislative body into an administrative agent of the state. (*Housing Authority* v. *Superior Court* (1950) 35 Cal.2d 550 [219 P.2d 457]; *Simpson* v. *Hite* (1950) 36 Cal.2d 125 [222 P.2d 225]; *Riedman* v. *Brison* (1933) 217 Cal. 383 [18 P.2d 947]; cf. *Hughes* v. *City of Lincoln* (1965) 232 Cal.App.2d 741 [43 Cal.Rptr. 306].) In enacting the instant ordinance, the voters of Livermore were acting in a legislative, not an administrative, capacity. (See *San Diego Bldg. Contractors Assn.* v. *City Council, supra,* 13 Cal.3d 205, 212-213, fn. 5 [118 Cal.Rptr. 146, 529 P.2d 570].)"

■ That the DRA is an encompassing regulation over a matter of such statewide concern as to convert the local legislative body into an administrative agent of the state is demonstrated by its history, its purpose and its content.

The history of the DRA is described in a monograph entitled California Local Agency Formation Commissions (1970), published by the Institute of Governmental Studies of the University of California, Berkeley, written by Richard LeGates, and in *Del Paso Recreation & Park Dist.* v. *Board of Supervisors* (1973) 33 Cal.App.3d 483 [109 Cal.Rptr. 169]. In brief, the DRA was designed to halt the proliferation of special districts, to contain urban sprawl and to deal with annexations, some of which had been designed to bring a high tax base within a city, others "defensively" to prevent annexation. (LeGates, *supra,* pp. 2-8.) LAFCO has been described as the Legislature's "watchdog" to guard against wasteful duplication of services. (*City of Ceres* v. *City of Modesto* (1969) 274 Cal.App.2d 545 [79 Cal.Rptr. 168].) Plainly, the matter was of pervasive state concern.

The Attorney General has given his opinion that LAFCO's are created by the state for the purpose of executing a part of the functions of state government even though these are locally performed. (45 Ops.Cal.Atty. Gen. 82 (1965).) It has been held that LAFCO is a public entity created by legislative fiat, is a body of special and limited jurisdiction, exercising the function of achieving the fundamental policies which have been determined by the Legislature. (*Simi Valley Recreation & Park Dist.* v. *Local Agency Formation Com.* (1975) 51 Cal.App.3d 648, 670, 688 [124 Cal.Rptr. 635].)

The nature of LAFCO's acts fits the description given in *Walker* v. *City of Salinas* (1976) 56 Cal.App.3d 711 [128 Cal.Rptr. 832] (wherein it was held that referendum does not apply to proceedings under the Community Development Law, Health & Saf. Code, §§ 33000-33738). At page 716, the court, borrowing language from *Hughes* v. *City of Lincoln* (1965) 232 Cal.App.2d 741, 745 [43 Cal.Rptr. 306], stated: " 'If the subject is one of statewide concern in which the Legislature has delegated decision-making power, not to the local electors, but to the local council or board as the state's designated agent for local implementation of state policy, the action receives an "administrative" characterization, hence is outside the scope of the initiative and referendum. [Citations.]' "

Moreover, the DRA *does* provide for elections in certain situations at the LAFCO step but these admittedly are not present in this case. In the instances in which elections are permitted, the voting is by the inhabitants of the districts, not by the electors of the county. There is a special complication in this case: if referendum were mandated in Contra Costa County, the electors of Alameda County would not

participate in the election because of the cession referred to above under Government Code sections 56012 and 56012.5. Here, there is evidence that the Legislature, by providing such cession from county to county, did not regard the matter as truly legislative. Indeed, if the cession were a legislative act, it would seem that it would have to be subject to referendum in Alameda County.

Petitioners are not attempting to apply referendum to the actions of LAFCO, but to those of the board of supervisors. But its actions under DRA are of the same character as are those of LAFCO. Although the board of supervisors is primarily the legislative body of a county (Gov. Code, § 50002), it has many nonlegislative functions. (13 Cal.Jur.2d, Counties, § 28, p. 376.) A brief analysis of its functions under the DRA shows that these are merely supplemental to the accomplishment of purposes of the state. Ordinarily, a legislative body may initiate the process of lawmaking; but under the DRA, the board of supervisors cannot act so; it acts upon receiving the proposed reorganization from LAFCO (Gov. Code, §§ 56274, 56291) or it applies to LAFCO (Gov. Code, § 56195). Ordinarily, a legislative body may amend proposed legislation; the board cannot change proposed reorganization under the DRA (Gov. Code, § 56275). Ordinarily, a legislative body need not ask anyone to agree to a desired change; under the DRA, the board must request LAFCO for any alteration (Gov. Code, § 56275).

Appellants cite *Norlund* v. *Thorpe* (1973) 34 Cal.App.3d 672 [110 Cal.Rptr. 246] as authority for the proposition that even if a subject be of statewide concern, in that the Legislature has provided by statute how a local legislative body shall act in attaining a desired result, referendum may lie. But *Norlund* is readily distinguishable; it relates to annexation of land to a city; the court believed that a single annexation to one city would not be of public concern to others hundreds of miles away. But the chaotic condition of heterogeneous districts throughout the state was and is a matter of concern to the entire commonwealth, as described above. The annexation statute (Gov. Code, § 35310.1) provides that the resolution of annexation shall be considered the same as an ordinance—thus deferring the effective date, a prime purpose of which is to preserve the right of referendum. But when the resolution ordering reorganization is filed with the Secretary of State, it is effective as of the date fixed in the resolution (Gov. Code, § 56456), or if no date is fixed, on the date of recordation with the county recorder (or recorders if filed in more than one county). (Gov. Code, § 56455.) No intent by the Legislature to allow time to permit the process of referendum appears.

 Finally, the conclusion is inescapable from the history of the events that petitioners' real quarrel is with the rezoning itself and that the attack upon the reorganization of the districts (which, of course, was accomplished for the purpose of facilitating the development project) is designed to impede the development. But the rezoning has been enacted by the representatives of the electors, the board of supervisors. Unresisted by referendum, it stands as law.

The reorganizing process provided by the DRA, although in this particular case ancillary to the object of the rezoning, may be used in effecting changes relatively small, as well as major ones. To hold that resolutions of reorganization are subject to referendum would subject all of them throughout the state to uncertainty of effective date, to vote by the electors of the entire county whether the county be large or small (and the number of required referendum signatures inconsiderable) and, in the case of districts having interests in two or more counties, to vote by the electors of the principal county which, perhaps, had attained this position only by the statutory cession.

 The reason for withholding referendum in cases of administrative decision is that to allow referendum to annul or delay executive or administrative conduct would destroy the efficient administration of government. (*Hopping* v. *Council of City of Richmond* (1915) 170 Cal. 605, 611 [150 P. 977]; *Lincoln Property Co. No. 41, Inc.* v. *Law* (1975) 45 Cal.App.3d 230 [119 Cal.Rptr. 292]; *Duran* v. *Cassidy* (1972) 28 Cal.App.3d 574, 581 [104 Cal.Rptr. 793]; *Martin* v. *Smith* (1960) 184 Cal.App.2d 571 [7 Cal.Rptr. 725].)

The judgment denying the petition for writ of mandate is affirmed.

Scott, Acting P. J., and Good, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 30, 1977.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.