[Civ. No. 1810.   Third Appellate District.—April 27, 1918.]

THE PEOPLE, etc., et al., Respondents, v. CITY OF LEMOORE (a Municipal Corporation), et al., Appellants.

MUNICIPAL CORPORATIONS—ANNEXATION OF TERRITORY—INHABITED AND UNINHABITED PARCELS—PROCEDURE.—In this proceeding to test the validity of an attempted annexation to the city of Lemoore of three hundred and eight and one-half acres of land designated as "the 1916 addition to the city of Lemoore," it is held that inasmuch as some of the parcels were inhabited and others uninhabited, the procedure laid down by the act of 1913 (Stats. 1913, p. 587) should have been followed as to the former, and the procedure laid down in the act of 1899 (Stats. 1899, p. 37) as to the latter.

APPEAL from a judgment of the Superior Court of Kings County.   M. L. Short, Judge.

The facts are stated in the opinion of the court.

F. E. Kilpatrick, and J. L. C. Irwin, for Appellants.

U. S. Webb, Attorney-General, Haven & Athearn, and H. Scott Jacobs, for Respondents.

BURNETT, J.—The purpose of the proceeding was to test the validity of an attempted annexation to the city of Lemoore of 308½ acres of land designated as "the 1916 addition to the city of Lemoore." A general demurrer to the complaint was overruled, and defendant declining to answer, judgment was rendered in accordance with the prayer of the complaint annulling such purported annexation. The question, therefore, is as to the sufficiency of the complaint to justify the decree.

It is not disputed that there are in force in California three separate statutes under which annexations of territory to municipalities may be made: Acts of 1889 (Stats. 1889, p. 358); of 1899 (Stats. 1899, p. 37); and of 1913 (Stats. 1913, p. 587).

The distinctive features of these acts, as far as germane to the present consideration and pointed out by respondents, are as follows:

(1) Act of 1889 for annexation of inhabited territory upon petition of electors of existing city.

(2) Act of 1899 for annexation of uninhabited territory.

(3) Act of 1913 for annexation of inhabited territory upon petition of electors in territory proposed to be annexed, which territory may be either: (a) One body (secs. 2 to 4) or (b) Two or more bodies, which must be submitted as separate propositions. (Sec. 6.)

In applying the law thus enunciated to the facts set out in the complaint these two inquiries are suggested by counsel:

1. Should the proposed annexation of the territory described in the complaint have been attempted as inhabited or uninhabited territory? 2. If the territory can "fairly be said to be inhabited," then should it have been regarded as one body of land or as "two or more bodies of outside territory," each one of which should have been submitted to the electors separately under the provisions of section 6 of the act of 1913?

It seems plain that the first of these questions cannot be answered so as to support the judgment of the court below.

If the 308½ acres be regarded as one tract, it must be considered as inhabited, for the simple reason that ninety-nine people reside upon it.

There would be no difference in principle if the tract were composed of ten acres or of one acre. If A owns a farm of 308½ acres composed of one tract and B one of ten acres and each resides upon his land, it would be just as inapt to say that any part of A's land is uninhabited as to so affirm of B's land. The fact of occupancy is not limited, manifestly, to the space occupied by the building or buildings, but extends to every portion of the single tract of which that space is an undivided part. It may be difficult to formulate a description that can be applied with accuracy to every situation, but to say that any portion of a single and separate tract of land is uninhabited when people actually reside within the boundaries of that tract of land involves a contradiction in terms.

The real point of controversy here is whether such land was properly regarded as a single tract, and as to this we entertain no doubt that the court below was right in impliedly holding that it was composed of several parcels and under the law of 1913 should have been submitted to a separate vote.

Paragraph 9 of the complaint is as follows:

"The territory attempted to be annexed by the proceedings hereinabove set forth and designated as 'The 1916 addition to the city of Lemoore' is platted on a map hereunto annexed and marked 'Exhibit A' and by this reference made a part hereof. Said territory is not a single body of territory lying contiguous to the City of Lemoore, but in fact, by reason of natural boundaries and diversity of uses is constituted and composed of nine separate and distinct parcels of land, which said parcels of land are described as follows, to wit: Parcel No. 1, contains approximately forty-eight (48) acres, is contiguous to said city of Lemoore and adjoins portions of the southerly and easterly corporate limits of said city. Said parcel is, however, wholly disconnected with any of the other property proposed to be annexed to said city of Lemoore, except that it is connected with parcel No. 2, hereinafter described, by a strip of land 1650 feet in length by 20 feet in width, and which strip of land is part of a public county road. This parcel constitutes a portion of a farm belonging to the relator, J. H. Fox, and is and was at all times herein mentioned entirely used for farming purposes. Said parcel is and at all times herein

mentioned was entirely uninhabited and no person resided or now resides thereon."

Parcel No. 2 is described as containing twenty-three acres and bounded on the north and east by the corporate limits and on the south and west by county roads, and it is alleged that, while subdivided for residential purposes, no person resides upon it.

Parcel No. 3 contains thirty acres, is separated from parcel No. 2 and parcels Nos. 4 and 5 by county roads, and is contiguous to the corporate limits only at the northeast corner of said parcel. It constitutes a part of a farm and has one dwelling-house upon it occupied by three persons.

Parcel No. 4 contains thirteen and one-half acres. It has been subdivided for residence purposes and is inhabited by forty persons.

Parcel No. 5 contains eighteen acres, separated from the corporate limits by parcel No. 4. It has been subdivided for residence purposes and is known as the Sunset Addition. No person resides upon any portion of it nor have any streets been constructed therein.

Parcel No. 6 contains twenty-nine and one-half acres and is contiguous to the northern part of the western corporate limits, but is separated from parcels Nos. 4 and 5 by the right of way of the Southern Pacific Railroad Company and from parcel No. 7 by a county road. It is used for farming purposes and is entirely uninhabited.

Parcel No. 7 contains eighty acres, is contiguous to the northern limits of the city, and is separated from parcels Nos. 6 and 7 by county roads. Said parcel, with the exception of four acres in the southeast corner thereof, is a portion of a ranch belonging to the relator, Lemoore Land and Fruit Growing Company, and used for farm purposes. "Said parcel, with the exception of said four acres, is, and at all times" herein mentioned was, totally uninhabited and no person resided or now resides thereon. The excepted parcel of four acres above referred to contained a winery at the time of said annexation. Said winery was occupied by five persons, a night watchman, his wife, and two children, and an engineer. They were all transient and none of them a voter.

Parcel No. 8 contains forty-seven and one-half acres and is separated from parcel No. 7 by a county road and from parcel No. 9 by a right of way of the Southern Pacific Company.

It is composed of portions of three ranches. There are two dwellings on the southwest corner of said parcel occupied by six persons, who are not voters.

Parcel No. 9 contains nineteen acres and is separated from parcel No. 8 by a right of way of the Southern Pacific Company. This parcel has been subdivided for residence purposes and is occupied by forty-five persons.

We herewith present a copy of said exhibit "A," which portrays the situation as thus described in the complaint.

Map Showing Territory Attempted to be Annexed to City of Lemoore.

Scale 1 inch to 800 feet.

Present corporate limits, City of Lemoore

Inhabited territory attempted to be annexed

Uninhabited territory attempted to be annexed

We think it must fairly be said from the foregoing that the new territory constituted more than one body, and that some of the parcels were inhabited and others uninhabited.

As to the former, the procedure indicated by section 6 of the act of 1913 should have been taken as follows: "The notice of such election shall state as separate propositions to be submitted at such election the question of the annexation of each body of new territory in the same manner as hereinbefore provided in the case of the notice of an election in such municipal corporation at which the question of the annexation of only one body of new territory thereto is submitted; and the question as to each such body of new territory shall be printed upon the ballots to be used at such election and the same shall be voted upon separately in like manner as hereinbefore provided in the case of the submission of the question of the annexation of one body of such territory."

As to the portions or bodies not inhabited we are persuaded that the statute of 1899 should have been followed. Appellant in its brief admits that separate elections could be compelled "in the case of numerous parcels contiguous to the city but separated from each other so that they could not be considered a contiguous body."

If we confine our attention to parcels Nos. 1 and 2, it would be a strained construction to hold that they were made a continuous and contiguous body by the attempt to join them through the instrumentality of a portion of a public road twenty feet wide and 1,650 feet long. They remain two separate and distinct bodies. The continuity of other portions is prevented also, and they are divided into separate parcels by county roads and the right of way of the Southern Pacific Company.

We may notice some of the cases cited by respondent as involving a situation somewhat analogous to that presented here.

In *Wild* v. *People*, 227 Ill. 556, [81 N. E. 707], the proceeding was in *quo warranto* to test the validity of the incorporation of a village. The plat shows that to the original inhabited hamlet the incorporators proposed to annex several narrow strips of land running in several directions from the inhabited portion of the hamlet. Toward the southwest a long strip was run with three angles, and from the bottom of the last strip, along a section line, was run a narrow strip fifty feet in width and half a mile long which connected a square body of land with the rest of the proposed incorporation. Some of the other strips were not contiguous except

that they cornered on each other. It was held that these strips which simply cornered were not contiguous, and as to the connecting fifty-foot strip the court said: "It is apparent that the fifty-foot strip is merely included for the purpose of connecting the piece of ground at the west end thereof with other territory in the village. It is also apparent that the piece of ground at the west end of the strip is not in fact contiguous to grounds in the village other than that strip. The use of that strip to connect the tract at its western extremity with other territory in the village is a mere subterfuge and not a compliance with the law. It is useless to discuss the plea further."

In *Linn County Bank* v. *Hopkins,* 47 Kan. 582, [27 Am. St. Rep. 310, 28 Pac. 606], the question was whether two cornering lots of land constituted one tract so as to be included in a homestead, and the court said:

"Does the constitution exempt two tracts of land as a homestead which corner? It has been settled by the court that a homestead must consist of only one tract of land. (*Randall* v. *Elder,* 12 Kan. 257, and authorities there cited.) In the case of *Kresin* v. *Mau,* 15 Minn. 119, it was said: 'Two tracts of land mutually touching only at a common corner— a mere point—cannot, according to any ordinary, or authorized use of language be spoken of as constituting one body or tract of land.' The same construction has been placed upon acts of Congress in relation to the entry of public lands. (1 Leslie's Land Laws, Reg. and Dec. 360. See, also, *Hill* v. *Bacon,* 43 Ill. 477; *Aldrich* v. *Thurston,* 71 Ill. 324; Thompson on Homestead Exemptions, secs. 120, 145, 147.)"

In the *Bolen Coal Co.* v. *Ryan,* 48 Mo. App. 515, it was held that lots separated from each other by an alley were not contiguous so as to permit a single mechanic's lien to be enforced.

*Anvil H. & D. Co.* v. *Code,* 182 Fed. 205, [105 C. C. A. 45], involved a similar question as to assessment work on mining claims and the circuit court of appeals of the ninth circuit said: "The two claims last named are not made contiguous by the fact that Lucky Fraction corners with each. Two tracts of land which touch at a common corner are not contiguous."

Another case more directly in point is *Capuchino Land Co.* v. *Board of Trustees of San Bruno,* 34 Cal. App. 239, [167 Pac. 178], wherein the matter was clearly considered and cogently treated by the first district court of appeal. There is

no appreciable difference in principle between that case and this, and the reason is just as persuasive here as there for sustaining the judgment of the lower court.

Of course, it is true, as stated in *People* v. *City of Los Angeles,* 154 Cal. 220, [97 Pac. 311], that the "question whether any particular territory of the shape, extent, and character fixed should be annexed to a municipality is purely political for the exclusive determination of the voters of the municipality sought to be annexed and with the wisdom of such determination the courts have no power to interfere."

But, it is equally true, as therein affirmed, that the courts have the right to interfere when some substantial provision of the law has been violated, and such, we believe, is this case.

We consider it manifestly unjust and inequitable under the circumstances described by the complaint for the electors residing in the two inhabited parcels Nos. 4 and 9 to determine the annexation of the other parcels against the will of their owners.

In conclusion, we may say that possibly by answer an issue might have been tendered so that it could be shown that these various tracts were used and treated as one tract and were, therefore, properly subject to the proceeding taken, but we are satisfied that their separate character is disclosed by their location, their different use, and the different conditions as to inhabitants, as set forth in the complaint.

We think the judgment is right, and it is therefore affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 24, 1918, and the following opinion then rendered thereon:

THE COURT.—The conclusion of the district court of appeal is fully sustained by what is correctly stated as to parcel No. 1, and the remaining parcel or parcels, and in denying a hearing in this court we are not called upon to express or indicate any opinion with regard to whether the parcels other than that numbered 1 together constitute a single body of land.

Our denial of the petition for a hearing in this court is not to be taken as an assent to what is said in the opinion of the district court of appeal on this point.