[Civ. No. 1509. Fifth Dist. Oct. 29, 1973.]

ROBERT K. MEYERS et al., Plaintiffs and Appellants, v.
LOCAL AGENCY FORMATION COMMISSION OF TULARE
COUNTY et al., Defendants and Appellants;
CITY OF VISALIA, Defendant and Respondent.

## COUNSEL

McCormick, Moock & McCormick and Walter K. McCormick for Plaintiffs and Appellants.

Calvin E. Baldwin, County Counsel, and Thomas D. Bowman, Assistant County Counsel, for Defendants and Appellants.

Nathaniel O. Bradley and Richard B. Isham for Defendant and Respondent.

## OPINION

**BROWN (G. A.), P. J.**—The plaintiffs, Robert K. Meyers, Pearl Meyers, R. C. Thiebaud, Robert M. Riesner, Lois M. Riesner, R. Earl Ruddy, Jr., and Wilda Ruddy (hereinafter referred to as "appellants"), are residents of

areas proposed to be annexed by the City of Visalia (hereinafter "City") under the Annexation of Uninhabited Territory Act of 1939[1] (Gov. Code, §§ 35300-35326; hereinafter referred to as the "1939 Act").[2]

The appellants appeal from the denial of a petition for administrative mandamus, filed pursuant to Code of Civil Procedure section 1094.5, seeking to annul two resolutions of the Local Agency Formation Commission of the County of Tulare (hereinafter "LAFCO") which approved two contiguous areas for annexation to the City. The appellants also sought, presumably pursuant to Code of Civil Procedure section 1085, and were denied a writ of mandate commanding the City to cease and desist from any further proceedings in connection with the annexation of the properties.

LAFCO has also appealed from the judgment of the trial court denying its costs.

The total area included within the two applications for annexation is a county "island" within the city limits. The City sought to annex substantially the same area early in 1969 under the Annexation Act of 1913 (§§ 35100-35158; hereinafter referred to as the "1913 Act") which requires a special election of registered voters residing in the territory proposed to be annexed, at which a majority of the votes cast must be in favor of annexation. (§§ 35122-35135.) That election failed on April 14, 1969.

An area contiguous to a city is deemed uninhabited for purposes of annexation under the 1939 Act if less than 12 registered voters reside within the territory at the time of the commencement of the annexation proceeding. (§ 35303.) Such an "uninhabited" annexation proceeding does not require the holding of an election or the obtaining of consent from the residents of the annexed territory, but the proceeding is subject to termination upon written protest by owners of land and improvements having a value constituting at least one-half of the total value of the land in and improvements on the territory proposed to be annexed. (§ 35313, subds. (a), (c).)

On November 20, 1969, the City filed with LAFCO two separate applications covering the areas referred to, which were given LAFCO identifying numbers 291-V-135 and 291-V-136.[3]

---

[1]This cause was argued before this court in October 1972. Submission has been deferred awaiting the decision of the Supreme Court of California in *Weber* v. *City Council* (Sept. 4, 1973) 9 Cal.3d 950 [109 Cal.Rptr. 553, 513 P.2d 601], which upheld the constitutionality of the 1939 Act.

[2]All statutory references are to the Government Code unless otherwise indicated.

[3]Before a petition for annexation may be filed or before a city can instigate annexation proceedings on its own motion, approval must be obtained from LAFCO (§§ 35002, 54790, 54795).

The territory covered by the two applications is within the area covered by the former proceeding. The two areas are contiguous and all the privately owned property in both areas is fully developed and improved with single-family dwellings. Less than 12 registered voters reside in either of the areas, but more than 12 registered voters reside in both proposed annexations considered as a single area.

Included within the proposed lands to be annexed are valuable county-owned properties, including the area encompassing the Tulare County office complex consisting of courthouse, jail, transportation center and agricultural building. These county-owned properties were divided into two separate parcels, each of which was then coupled with the privately owned parcels so that the assessed value of the privately owned property in each of the areas of proposed annexation is less than the assessed valuation of the county-owned properties coupled with it.

On December 18, 1969, LAFCO conducted a properly noticed hearing (§ 54795) on the two applications and thereafter made findings of fact and approved both applications.

By resolution dated January 15, 1970, at the request of the City and pursuant to section 54799.1, LAFCO deleted and rescinded its resolution approving application 291-V-136, thus leaving application 291-V-135 as the only one pending. This administrative mandamus proceeding was thereafter filed on February 13, 1970.

At the hearing before LAFCO on December 18, 1969, appellants appeared personally and through their counsel and vigorously objected to the approval of the two applications on the basis that the City had manipulated the boundaries of a single area into two areas for the purpose of depriving the residents therein of their right to vote on the annexation proposals in fraudulent circumvention of the 1913 Act and in violation of the basic philosophy of the 1939 Act. (*Weber* v. *City Council* (1973) 9 Cal.3d 950, 963-964, fn. 12 at p. 964 [109 Cal.Rptr. 553, 513 P.2d 601]; *City of Anaheim* v. *City of Fullerton* (1951) 102 Cal.App.2d 395, 403 [227 P.2d 494].)

LAFCO has consistently maintained throughout the administrative hearing, in the trial court and on this appeal that the exclusive criteria to be considered by it in the review of annexation proposals are set forth in sec-

tion 54796[4] as they relate to the planning aspects of a proposed annexation and that the question of the configuration of areas proposed to be annexed and the location of boundary lines are only relevant insofar as they relate to the factors set forth in section 54796. Accordingly, LAFCO made no findings on the issues raised by appellants of manipulation of boundary lines and fraudulent circumvention of the 1913 Act and approved the application without purporting to decide that question.

We have found no explicit authority on this question but, on principle and the statutory law, are persuaded that LAFCO's position must be sustained. The basic purpose of LAFCO is defined in section 54774 as ". . . the encouragement of the orderly formation and development of local governmental agencies based upon local conditions and circumstances. One of the objects of the Local Agency Formation Commission is to make studies and to obtain and furnish information which will contribute to the logical and reasonable development of local governments in each county and to shape the development of local governmental agencies so as to advantageously provide for the present and future needs of each county and its communities." We perceive nothing inconsistent between this stated purpose and limiting LAFCO's authority in annexation cases to considering the criteria set forth in section 54796 (see fn. 4, *supra*) only as they relate to the planning function. It appears to us that LAFCO should remain free from entanglement in the legal cobwebs spawned by such considerations as manipulation of boundaries and fraudulent circumvention of the 1939 Act for the purpose of depriving residents of their right to vote and that these

---

[4]Section 54796, as it read at the time of the administrative proceedings, stated: "Factors to be considered in the review of a proposal shall include but not be limited to:

"(a) Population, population density: land area and land use; per capita assessed valuation; topography, natural boundaries, and drainage basins; proximity to other populated areas; the likelihood of significant growth in the area, and in adjacent incorporated and unincorporated areas, during the next 10 years.

"(b) Need for organized community services; the present cost and adequacy of governmental services and controls in the area; probable future needs for such services and controls; probable effect of the proposed incorporation, formation, annexation, or exclusion and of alternative courses of action on the cost and adequacy of services and controls in the area and adjacent areas.

"(c) The effect of the proposed action and of alternative actions, on adjacent areas, on mutual social and economic interests and on the local governmental structure of the county.

"(d) The definiteness and certainty of the boundaries of the territory, the nonconformance of proposed boundaries with lines of assessment or ownership, the creation of islands or corridors of unincorporated territory, and other similar matters affecting the proposed boundaries."

legal questions, absent express statutory authority, would be better left to the courts.[5]

We conclude that LAFCO did not err in refusing to consider this issue.

■   Appellants, however, contend that certain other findings of LAFCO made in support of its resolution approving the annexations are not supported by the evidence.

In reviewing the decision of LAFCO by administrative mandamus pursuant to Code of Civil Procedure section 1094.5, the trial court and this court are bound by the substantial evidence rule. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 149-150 [93 Cal.Rptr. 234, 481 P.2d 242]; *Thompson* v. *City of Long Beach* (1953) 41 Cal.2d 235, 240-241 [259 P.2d 649]; *Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575, 590-593, 592 fn. 11 [100 Cal.Rptr. 16, 493 P.2d 80].) The appellants presented evidence that some of the residents did not want their property to be part of the city and had no subjective need for annexation. The City offered considerable evidence on all of the issues before LAFCO as defined in the statute and cases. (See § 54796, fn. 4, *supra*.) The detailed findings made by LAFCO make it obvious that it did consider the need of the area and the various criteria required by law.

While there is some conflict in the evidence on some of the issues before LAFCO, there is substantial evidence to support its conclusions on the issues it was authorized to consider. This court's power begins and ends with that determination. We have no authority to reweigh the evidence. No useful purpose would be served in extending this opinion by a detailed discussion of all of the evidence supporting LAFCO's conclusions. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568,

---

[5]See Gother, *A Study of Recent Amendments to California Annexation Laws* (1963) 11 U.C.L.A. L.Rev. 41, 46, wherein the author of that article tends to confirm this view: "The existence of the Local Agency Formation Commission and the necessity of obtaining its approval will have little effect on the question of inhabited versus uninhabited territory. *The Commission is not empowered to make such a determination, nor is this distinction listed as one of the factors that the Commission should consider* except perhaps by implication from the fact that the 'population' of the territory is listed as one factor. However, the possibility that the proceeding would eventually be set aside by judicial decision, because of the method of drawing the boundaries in an attempt to control the number of persons residing in the area, might well be a significant factor to be considered by the Commission in approving or disapproving an annexation. The Commission could condition its approval on a change in the boundary lines so as to increase or decrease the number of residents in the territory, and, therefore, force a city either to abandon its attempt or to follow a procedure which it did not select at the outset." (Italics added; fn. omitted.)

496 P.2d 480]; *Continental Dairy Equip. Co.* v. *Lawrence* (1971) 17 Cal. App.3d 378, 382-383 [94 Cal.Rptr. 887].)

■ Appellants assert they were deprived of a fair hearing because two members of LAFCO were also members of the Board of Supervisors of Tulare County. These members of LAFCO were challenged by appellants at the LAFCO hearing but refused to disqualify themselves. The basis of the challenge was that since county property was involved in the annexation members of the county board of supervisors should be disqualified. No authority is cited for this proposition, and we have concluded that it has no merit. Section 54780, subdivision (a), expressly requires two members of LAFCO to be from the membership of the board of supervisors.[6] There are only two sections of the act which refer specifically to disqualifications. Section 54782.6 provides for the automatic disqualification of a member of LAFCO who is an officer of a special district when it is considering a proposal affecting the district, and section 54784 provides for disqualification of a commission member who is an officer of a city when that city presents a proposed annexation before LAFCO. In the absence of other rules and regulations adopted by LAFCO with respect to disqualification, these sections govern. (See § 54784.1.) It thus appears to have been the intention of the Legislature to disqualify LAFCO board members only in certain express situations, and county ownership of land proposed to be annexed to a city is not included. Under the rule of *expressio unius est exclusio alterius* it is presumed that the express mention of the two disqualifications implies the exclusion of others. (*Jones* v. *Robertson* (1947) 79 Cal.App.2d 813, 816 [180 P.2d 929].)

Moreover, we can take judicial notice of the commonly known fact that nearly every proposal for annexation of land to a city includes county-owned land; it is logical that the Legislature did not intend to disqualify the two members from the county board of supervisors from acting on the five-man LAFCO board in the multiplicity of cases relating to such situations.

■ We now turn to a consideration of the writ sought against the City. As we have indicated, the court denied appellant's request for an order

---

[6]Section 54780 provides in pertinent part: "There is hereby created in each county a local agency formation commission. Except as provided in Section 54781 and 54782, the commission shall consist of five members, selected as follows:

"(a) Two representing the county, appointed by the board of supervisors from their own membership. The board of supervisors shall appoint a third supervisor who shall be an alternate member of the commission. He is authorized to serve and vote in place of any supervisor on the commission who is absent or who disqualifies himself from participating in a meeting of the commission."

directed to the City to cease further proceedings to annex the subject properties.

We have carefully reviewed the record before us and find no substantial evidence to support any conclusion other than that this proceeding was undertaken with the intent of arbitrarily manipulating the boundaries of the proposed annexation for the purpose of circumventing the legislative classification between inhabited and uninhabited territory. The representative of the City who testified before LAFCO admitted that this was the purpose and explained that one residence was excluded because it would have brought the number of registered voters to 12, one in excess of the maximum number permitted under the 1939 Act. He also admitted that the assessed valuation of the county property exceeded that of property owned by the residents in each of the areas and that this county property was so divided and coupled with the privately owned property in such a way that the value of the private ownerships protesting would not exceed one-half. It further appears that the approval of No. 291-V-136 was made expressly conditional upon the approval of No. 291-V-135, thus tying the two annexations together. They were in essence one proceeding. (27 Ops.Cal. Atty. Gen. 244, 247 (1956).) No legitimate reason or explanation whatsoever was presented by the City as to why the proposed annexations were divided into two separate proceedings rather than being treated as one.

Such an effort is not only in violation of the principles established in *City of Anaheim* v. *City of Fullerton* (1951) 102 Cal.App.2d 395 [227 P.2d 494], where the court struck down a similar stratagem, but it violates the concept and purpose of the 1939 Act as recently explained by our Supreme Court in *Weber* v. *City Council, supra,* 9 Cal.3d 950, 963-964.

In *City of Anaheim* v. *City of Fullerton, supra,* 102 Cal.App.2d at page 403, the court made the cogent observation: "The controlling question was, and is, whether the two Anaheim proceedings are in essence and effect one proceeding, which for reasons of subterfuge and evasion was carried through as two proceedings. In *People* v. *Town of Ontario,* 148 Cal. 625 [84 P. 205], it is said: 'If the "territory" proposed to be annexed, regarded as a whole, may fairly be said to be inhabited, the proceedings must be had under the (Inhabited Territory Act).' In *People* v. *City of Lemoore,* 37 Cal.App. 79 [174 P. 93], in discussing the question as to whether a parcel is inhabited or uninhabited the court said: 'The fact of occupancy is not limited, manifestly, to the space occupied by the building or buildings, but extends to every portion of the single tract of which that space is an undivided part.' That case quoted from *Wild* v. *People,* 227 Ill. 556 [81

N.E. 707], 'The use of that strip (in that case 50 feet) . . . is a mere subterfuge and not a compliance with the law.' "

Equally instructive is the language of the Supreme Court in *Weber* v. *City Council, supra,* 9 Cal.3d 950, at page 964: "It is true that the definition in the 1939 act of 'uninhabited' territory as territory containing fewer than 12 resident registered voters, without regard to any other factors, such as the total number of inhabitants or the ratio of the number of voters or inhabitants to the territory's geographic area, does not in other circumstances preclude possible applications of the 1939 act to the annexation of territory which is in fact substantially inhabited. Some forms of boundary manipulation or other arbitrary action for the purpose of circumventing the legislative classification between uninhabited and inhabited territory have been voided by the courts or prohibited by statute.[12]"

"[12]California appellate courts have invalidated the following attempts to circumvent the distinction between 'uninhabited' territory annexable under the 1939 act and inhabited territory annexable under the 1913 act: (1) simultaneous 1939 act proceedings to annex territories contiguous to each other, each of which contains fewer than 12 resident voters but which together contain more than 12, disqualifying the combined territories under the 1939 act (*City of Anaheim* v. *City of Fullerton* (1951) 102 Cal. App.2d 395, 403 [227 P.2d 494]); (2) inclusion of a separable tract of uninhabited land in otherwise inhabited territory being annexed under the 1913 act (*U.S. Pipe & Foundry Co.* v. *City Council* (1957) 150 Cal. App.2d 630 [310 P.2d 431]; *Johnson* v. *City of San Pablo* (1955) 132 Cal.App.2d 447 [283 P.2d 57]); (3) exclusion of resident registered voters from the computation determining whether the territory to be annexed is uninhabited (§ 35303) by drawing the annexation boundary so as to divide the parcels on which the voters reside and to include only those portions of the lots not occupied by their homes (*City of Port Hueneme* v. *City of Oxnard* (1959) 52 Cal.2d 385, 391 [341 P.2d 318]; *Cothran* v. *Town Council* (1962) 209 Cal.App.2d 647 [26 Cal.Rptr. 319])."

Under these principles, and on the facts presently before the court, the entire proceedings were infected with subterfuge, evasion and illegality; the City cannot purify one-half of the proceedings (291-V-135) by asking that the other one-half (291-V-136) be withdrawn. The same illegal intent and purpose that contaminated the whole inheres in the residue.

However, we do not reach the merits because, as to the City, the petition for the relief sought is premature. It is premature because the City is not bound by LAFCO's approval and could abandon further efforts to annex

the properties. Secondly, though the possibility is remote, the City could decide to proceed under the 1913 Act rather than the 1939 Act. Thirdly, assuming the City does proceed under the 1939 Act, the next step will be to pass a resolution of annexation which must contain notices of when written protests will be heard and when annexation will become effective if completed (§§ 35310, 35306, 35307, 35311, 35312 and 35313). Further proceedings cannot be taken if, at the time set for hearing the protests (§ 35312), protests are made by public and private owners of one-half of the assessed valuation of the territory (§ 35313). In the case at bench, until the protests have been received it will not definitely be known whether the owners of one-half of the value of the territory will vote in favor of the annexation.

At the latter point, however, should the protests represent less than one-half of the value of the annexed territory, the appellants will be in a procedural position to commence an action against the City for the purpose of compelling the City to terminate and nullify the annexation proceedings. However, since the petition is now premature, the judgment of the trial court as it pertains to the City must be affirmed on that ground.

LAFCO has appealed from the order of the trial court denying its costs. Appellants concede that the trial court should have awarded the cost of preparing the transcript of the hearing before LAFCO but contend the amount should be $136 rather than LAFCO's claimed amount of $688.45. Fixing the amount is a factual matter which can be resolved by the trial court.

The judgment is affirmed, except the part denying costs to LAFCO, which part is reversed with directions to the trial court to fix the amount of such costs.

All parties shall bear their own costs on appeal.

Franson, J., concurred.

Stone, P. J.,* deeming himself disqualified, did not participate.

---

*Retired December 1, 1972